———o———

AMELIA KERR ET AL., ADM'RS v. SOLOMON O. KINGSBURY, TRUMAN H. LYON, SAMUEL P. BENNETT ET AL.

*Mortgage on lands—Tenants' buildings.*

A tenant's erections are not brought within a subsequent mortgage on the premises by the tenant's neglect to remove them on a renewal of his lease by a new landlord.

Where one who has leased land to a firm buys out the right of one of the partners and afterwards gives a mortgage on the premises, the possession of the new firm is notice to the mortgagee that erections put up by the former firm are not covered by the mortgage, because the other partner's rights cannot be taken away.

Appeal from Kent. Submitted June 12. Decided June 21.

FORECLOSURE. Complainants appeal.

*S. C. Hinsdale* for complainants. Acceptance of a new lease implies the surrender of the old one, *Lyon v. Reed*, 13 M. & W., 285; *Davison v. Stanley*, 4 Burr., 2210; 2 Smith's Lead. Cas. (7th Am. ed.), 756; Taylor's L. & T., §§ 507, 512; *Jungerman v. Bovee*, 19 Cal., 354; *Van Rensselaer v. Penniman*, 6 Wend., 579; *Logan v. Anderson*, 2 Doug. (Mich.), 101; Roberts on Frauds, 254–6; and where the grantor of the premises is also their lessee, there is such unity of title that erections on the premises are included in a mortgage given by him, *Jones v. Detroit Chair Co.*, 38 Mich., 92; *Gaskill v. Trainer*, 3 Cal., 334; acceptance of a new lease covering erections estops the lessees from questioning their landlord's title to them, *Bertram v. Cook*, 32 Mich., 518; Tyler on Fixtures, 442; a tenant must remove his erections while he is in possession, id. 452, § 551; *Thropp's Appeal*, 70 Penn. St., 395; *Thomas v. Crout*, 5 Bush, 37; possession to operate as notice should be inconsistent with the possessor's title, Jones on Mortgages, § 600; *Staples v. Fenton*, 5 Hun, 172; trade fixtures are not removable by the mortgager of the premises on which they stand, *Climie v. Wood*, 3 Exch., 260; *Cullwick v. Swindell*, 3 Eq., 249; *Holland v. Hodgson*, L. R. 7 C. P., 328; *Winslow v. Merch. Ins. Co.*, 4 Met., 310; *Roberts v. Dauphin Deposit Bank*, 19 Penn. St., 75; *Burnside v. Twitchell*, 43 N. H., 390; *Pettengill v. Evans*, 5 N. H., 54; *Maples v. Millon*, 31 Conn., 598; *Arnold v. Crowder*, 81 Ill., 56; *Bliss v. Whitney*, 9 Allen, 114; *Laflin v. Griffiths*, 35 Barb., 58; Jones on Mortgages, § 681; Tyler on Fixtures, 620, 657–8; 1 Washb. R. P., 15; Willard's Eq. Jur., 377.

*Blair, Eggleston, Kingsley & Kleinhans* for defendants.

COOLEY, J. The controversy in this case concerns

certain buildings which are claimed by complainant under a real estate mortgage given March 13, 1874, by defendant Solomon O. Kingsbury to their testator. The defendant Lyon, on the other hand, claims them as tenant's fixtures under a lease of the lands mortgaged.

The facts appear to be that the defendant S. O. Kingsbury, on the 25th day of January, 1871, being then the owner of certain premises situated on Calder and Almy streets in the city of Grand Rapids, leased the Calder street lots for ten years from June 1, 1871, to John S. Long and Samuel P. Bennett, constituting the copartnership of Long & Bennett, who took possession and occupied the same for the purposes of a coal and wood yard. The lease contained a provision allowing the lessees thirty days on its termination for the removal of the buildings they might erect. June 1, 1872, a further lease of a portion of the Almy street lots was made by Kingsbury to Long & Bennett, to terminate at the same time with the other, and containing a similar provision respecting the removal of buildings.

In September, 1873, S. O. Kingsbury purchased of Long his interest in the copartnership of Long & Bennett, and assumed his place in the business, which was thereafter carried on in the name of Kingsbury & Bennett. In February, 1874, S. O. Kingsbury conveyed all the lots on the two streets to Gaius P. Kingsbury. This conveyance does not seem to have been understood by the parties as a transfer to G. P. Kingsbury of anything more than the fee subject to the leases, and the business of Kingsbury & Bennett went on as before. In March, 1874, the deed to G. P. Kingsbury in the mean time not having been recorded, S. O. Kingsbury gave to Henry A. Kerr, whom the complainants represent, the mortgage under which they claim. In January, 1876, G. P. Kingsbury gave to Kingsbury & Bennett a new lease of all the lots for five years and five months. This would make the lease terminate at the same time as the former leases, and upon the face of the transaction no

reason appears for giving it, unless it was to obtain for the purposes of the business the copartnership was engaged in, the lots on Almy street which were not covered by the second lease.

The buildings the right to which is in dispute in this case, had all been put up as tenant's erections previous to the giving of the Kerr mortgage, and were occupied by the copartnership of Kingsbury & Bennett for the purposes of their business at that time. That firm subsequently became insolvent and made an assignment for the benefit of their creditors to the defendant Lyon, who undertook to remove the buildings as personalty. It is not disputed that, as between landlord and tenant, the buildings would in general have been removable, but it is insisted that under the facts of this case they are covered by the lien of the real estate mortgage.

I. In brief the claim on the part of the complainants that when Kingsbury & Bennett, in January, 1876, accepted from G. P. Kingsbury a new lease, they in contemplation of law surrendered the existing leases, and not having asserted and exercised a right to remove the erections made previously, they thereby abandoned them to their landlord, and could not assert or transfer to any one else the right to remove them afterwards. This is the principal question in the case.

The right of a tenant to remove the erections made by him in furtherance of the purpose for which the premises were leased, is conceded. The principle which permits it is one of public policy, and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property the circumstances will admit of. On the other hand, the requirement that the tenant shall remove during his term whatever he proposes to claim a right to remove at all, is based upon a corresponding rule of public policy, for the protection of the landlord, and which is that the tenant shall not be suffered, after he

has surrendered the premises, to enter upon the possession of the landlord or of a succeeding tenant, to remove fixtures which he might and ought to have taken away before. A regard for the succeeding interests is the only substantial reason for the rule which requires the tenant to remove his fixtures during the term: indeed, the law does not in strictness require of him that he shall remove them during the term, but only before he surrenders possession, and during the time that he has a right to regard himself as occupying in the character of tenant. *Penton v. Robart,* 2 East, 88; *Weeton v. Woodcock,* 7 M. & W., 14.

But why the right should be lost when the tenant, instead of surrendering possession, takes a renewal of his lease, is not very apparent. There is certainly no reason of public policy to sustain such a doctrine; on the contrary, the reasons which saved to the tenant his right to the fixtures in the first place are equally influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd than a rule of law which should in effect say to the tenant who is about to obtain a renewal: "If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord."

There are some authorities which lay down this doctrine. *Merritt v. Judd,* 14 Cal., 59, is directly in point. That case is decided in reliance upon previous decisions which do not appear to us to warrant it. *Fitzherbert v. Shaw,* 1 H. Bl., 258, was a case in which ejectment having been brought against the tenant, he entered into an agreement that judgment should be signed at a certain time with stay of execution for a period; and the decision that the tenant could not afterwards remove fixtures was based upon the agreement. *Lyde v. Russell,* 1 B. & Ad., 394, only asserts the general rule that where the

tenant surrenders possession without removing his fixtures he loses his right. *Thresher v. East London*, 2 B. & C., 608, was decided upon the construction of a covenant contained in the new lease, by which the tenant undertook to repair the erections and buildings, and at the end of the term the premises so repaired, etc., *to leave and yield up*, etc. *Shepard v. Spaulding*, 4 Met., 416, has some apparent analogy to the present case, but it is only apparent. There the tenant surrendered to his landlord without removing the fixture in controversy, but undertook to assert the right under a lease made several years afterwards, and which he took when he was as much a stranger to the premises as if he had never occupied them. It is manifest that none of these cases affords any support to the conclusion in *Merritt v. Judd*. And we have been unable to discover in *Landon v. Platt*, 34 Conn., 517; *Davis v. Moss*, 38 Penn. St., 346, or *Haflick v. Stober*, 11 Ohio [N. S.], 482, to which our attention is called in this case, anything important to this discussion.

The case of *Loughran v. Ross*, 45 N. Y., 792 is in accord with the case in California. In that case Mr. Justice Allen speaking for the majority of the court says: "In reason and principle the acceptance of a lease of the premises, including the buildings, without any reservation of right, or mention of any claim to the buildings and fixtures, and occupation under the new letting, are equivalent to a surrender of the possession to the landlord at the expiration of the first term. The tenant is in under a new tenancy, and not under the old; and the rights which existed under the former tenancy, and which were not claimed or exercised, are abandoned as effectually as if the tenant had actually removed from the premises, and after an interval of time, shorter or longer, had taken another lease and returned to the premises." This is perfectly true if the second lease includes the buildings; but unless it does so in terms or by necessary implication, it is begging

the whole question to assume that the lease included the buildings as a part of the realty. In our opinion it ought not to be held to include them unless from the lease itself an understanding to that effect is plainly inferable.

In *Davis v. Moss*, 38 Penn. St., 346, 353, it is said by Mr. Justice Woodward that "if a tenant remain in possession after the expiration of his term, and perform all the conditions of the lease, it amounts to a renewal of the lease from year to year, and I take it he would be entitled to remove fixtures during the year." This in our opinion is perfectly reasonable, and it is as applicable to other tenancies as it is to those from year to year which are implied from mere permissive holding over.

II. It is further insisted on the part of complainants that the right of the assignee of Kingsbury & Bennett to claim the buildings as fixtures cannot be asserted as against the mortgage given to Kerr, because the mortgagee had a right to assume, when he took the mortgage, that Kingsbury the mortgagor occupied the premises as owner of the fee merely, and was conveying to him by way of security every thing that as between mortgagor and mortgagee would pass as realty: in other words that the possession of Kingsbury & Bennett was no notice to Kerr that rights in the buildings were claimed by them as tenants.

It is true as a general rule that the possession of a grantor or mortgagor is no notice to his grantee or mortgagee that he claims any rights in the premises as against the conveyance he gives. *Bloomer v. Henderson*, 8 Mich., 395; *Dawson v. Danbury Bank*, 15 Mich., 489. But here Bennett as well as Kingsbury was in possession, and Bennett's rights could not be taken away by any act of Kingsbury's. As to Bennett the buildings remained chattels, and it was the duty of Kerr to take notice of his rights. If he had done so and made the necessary inquiries, he would have ascertained that the

buildings were personalty; for they could not be realty as to one interest and personalty as to another. *Adams v. Lee*, 31 Mich., 440.

We think the decree below was correct, and it must be affirmed with costs.

The other Justices concurred.