HIGGINBOTHAM *v.* PHILLIPS.

1. LANDLORD AND TENANT—PERSONAL PROPERTY—BUILDINGS—RE-
MOVAL.

Defendant, who purchased of a sublessee a building and
saloon business on lands of the complainants, without
any arrangement with them, and being in possession of
the realty under a lease from month to month from the
sublessee, was entitled to remove the structure, which
had no foundation except posts and had no cellar, and
the right was not lost by a sale of the fee and conveyance
to complainants as purchasers, where they knew the facts,
and had notice of defendant's occupancy, and extent of
his claim.

2. SAME.

It is a general rule that a tenant must remove any struc-
ture which he has erected upon leased premises, either
within his term or in a reasonable time thereafter. The
right is not lost to the tenant by renewing his lease with-
out removing it.

3. SAME—CHATTEL.

And defendant's grantor, who constructed it and who held
a tenancy from month to month, could not be held to
have intended that his building should become part of the
realty, but must be presumed to have considered and
treated the same as personal property in the absence of
any evidence tending to show the contrary purpose on
his part.

Appeal from Wayne; Hally, J. Submitted April 11,
1916. (Docket No. 66.) Decided June 1, 1916.

Bill by William E. Higginbotham and another against
Richard Phillips to restrain the removal of a building
from complainant's land. From a decree for complain-
ants, defendant appeals. Reversed, and injunction
dissolved.

*Jay Fuller* (*Charles C. Stewart*, of counsel), for complainants.

*Philip S. Dickinson* (*Julian G. Dickinson*, of counsel), for defendant.

OSTRANDER, J. The bill is filed to restrain defendant from removing a building from certain land. From the testimony I find the following facts:

The land belongs to complainants, who purchased it in September, 1911. The Detroit Brewing Company is, and for more than ten years has been, lessee of the land, and adjoining land, from the owners. It has a lease from complainants. It had, before complainants purchased the land, sublet some of it, the leases resting in parol, the terms of tenants being from month to month. One Frank Parmenter was such a subtenant, and he erected a one-story building, 16 by 20 feet in size, on the land, and occupied it with a saloon. He sold the business and building to William Matla, who also occupied it with a saloon, and who became the tenant of the brewing company, paying ground rent. In April, or in May, 1911, defendant rented the building from Matla and later, in November, 1911, bought the building from him. Defendant never paid rent to the Detroit Brewing Company, nor did he pay any rent to any one after he bought the building. The Detroit Brewing Company never recognized him as its tenant. Matla agreed with defendant that he would "protect me up to the 1st day of May to move that building." The Detroit Brewing Company looked to Matla for the ground rent, and it is inferable that Matla considered himself liable therefor to May 1, 1912. Defendant remained in possession of the building and, of course, of the land upon which it stands until the bill in this cause was filed April 12, 1912. He made no arrangement with the owners of the land, although in the bill it is charged that he is a tenant of complain-

ants, threatening to remove the building from the land, claiming to be owner of the building.

The building is supported by posts, there is no cellar, no partitions, and its value is stated in the bill to be more than $100. It cost more than that sum. There was no agreement or express understanding with the brewing company for its erection, and that company never claimed to own it.

When complainants purchased the land, they, or one of them, knew the building in question was upon the land and that defendant occupied the building under Matla, who held from the brewing company. After complainants purchased, defendant offered to sell them the building, claiming to own it. Frank Parmenter was a witness, called by the defendant. Over the objection that it was incompetent, being equally within the knowledge of a deceased person, he gave testimony tending to prove that before erecting the building in question he had a written agreement with, or written permission from, not his landlord, but the owner of the land, to remove the building; that he turned it over to Matla when he sold the building to him; that it was mislaid, he had searched for it, and could not find it. Asked to state the contents of the writing, he vaguely said that it was a privilege to move the building when he chose, no certain time being fixed. This testimony the trial court, I think properly, refused to consider.

The court ruled that defendant could not establish his asserted right without the said testimony of Parmenter "because property in dispute, unless an agreement existed to the contrary, would be realty and not personalty, and as realty it would pass with the conveyance of the real estate on which it stands." The court also ruled that if the proposition just stated is unsound, and if Parmenter's testimony is considered, it discloses no more than a right which he could not

assign to others and have it operate beyond the term of his tenancy.

Somewhat curiously, neither of these propositions is discussed in the brief for complainants. It is the general rule that a tenant must remove erections which he has placed upon the leased premises within his term or within a reasonable time thereafter; not doing so, it is presumed that he has abandoned them. In the following language the rule and the reason for it is discussed by COOLEY, J., in *Kerr* v. *Kingsbury,* 39 Mich. 150, 153 (33 Am. Rep. 362) :

"The right of a tenant to remove the erections made by him in furtherance of the purpose for which the premises were leased, is conceded. The principle which permits it is one of public policy, and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property the circumstances will admit of. On the other hand, the requirement that the tenant shall remove during his term whatever he proposes to claim a right to remove at all, is based upon a corresponding rule of public policy, for the protection of the landlord, and which is that the tenant shall not be suffered, after he has surrendered the premises, to enter upon the possession of the landlord or of a succeeding tenant, to remove fixtures which he might and ought to have taken away before. A regard for the succeeding interests is the only substantial reason for the rule which requires the tenant to remove his fixtures during the term; indeed, the law does not in strictness require of him that he shall remove them during the term, but only before he surrenders possession, and during the time that he has a right to regard himself as occupying in the character of tenant. *Penton* v. *Robart,* 2 East, 88; *Weeton* v. *Woodcock,* 7 M. & W. 14.

"But why the right should be lost when the tenant, instead of surrendering possession, takes a renewal of his lease, is not very apparent. There is certainly no reason of public policy to sustain such a doctrine; on the contrary, the reasons which saved to the tenant his right to the fixtures in the first place are equally

influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd that a rule of law which should in effect say to the tenant who is about to obtain a renewal: 'If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord.' "

In *Osborn* v. *Potter*, 101 Mich. 300 (59 N. W. 606), a tenant had erected a frame building on leased land. He sold it and the purchaser went into possession and attorned to the original lessor, who, after a considerable time had elapsed, gave him a lease with a provision therein permitting removal of the building at its expiration. Later the tenant sublet land and building to a third party, and the possession was continued for two years after the expiration of the said lease; rent being paid by the sublessees to the lessee, and by him to the owner, lessor. Then the land was sold and the owner of the building demanded it from his tenant and the purchaser, and asked for permission to remove the building. Permission being refused, he brought trover for the value of the building and recovered. In *Hayward* v. *School District*, 139 Mich. 539 (102 N. W. 999), the rule of *Kerr* v. *Kingsbury* and *Osborn* v. *Potter* is approved. And in *Kerr* v. *Kingsbury* it was held that a mortgagee of the premises was bound to take notice of the rights of the tenant owners of buildings.

It cannot be supposed that Parmenter, holding from month to month under a lease resting in parol, intended that the building he erected should become realty. He testified, and, if he had not, the inference would be unavoidable, that the building was a chattel and his property. The man who purchased it attorned to his landlord. There is no evidence here of his intention to abandon the building to the landlord or to

the owner of the land. This purchaser also sold the building, but was himself thereafter treated as a tenant of the original lessor. He was so treated when the land was sold to complainants, and when the bill in this cause was filed. There is no evidence to support the proposition that the original or the successive owners of the building, or the lessee of the owner of the land, or the owner of the land regarded the building as anything but a chattel. The complainants, purchasers of the land, might have learned this by making inquiry. The principles stated in *Kerr* v. *Kingsbury* support defendant's position. I cannot distinguish this case and *Osborn* v. *Potter.*

The decree is reversed, and injunction dissolved, with costs of both courts to appellant.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.