CAMERON *v.* OAKLAND COUNTY GAS & OIL COMPANY

1. FIXTURES—ANNEXATION—TRADE USE.

   To the general rule at common law that whatever is annexed to the freehold becomes part of it and cannot afterwards be removed, except by him who is entitled to the inheritance, there is the well-recognized and longstanding exception that fixtures erected by the tenant for purposes of trade may be removed by him, regardless of the form or size of the building.

2. COMMON LAW—ENGLAND—AMERICA—ADAPTATION.

   The common law of England is not to be taken, in all respects, to be that of America but only that portion applicable to the situation here at the time of its adoption.

3. FIXTURES—TRADE FIXTURES—REMOVAL—PUBLIC POLICY.

   Right of a tenant to remove erections made by him in furtherance of the purpose for which the premises were leased is founded upon public policy and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property under the circumstances.

4. SAME—REMOVABLE TRADE FIXTURES—PERSONALTY—UNJUST ENRICHMENT OF LANDLORD.

Rule that tenant's erections for purposes of trade proposed to be carried on in the premises leased are treated as personalty where landlord has contributed nothing toward it is based on fact that otherwise it would be an unjust enrichment of the landlord at the expense of his tenant.

5. SAME—GASOLINE FILLING STATION—REAL ESTATE OFFICE—REMOVAL—INTENT.

At expiration of lease of vacant lot for term of three years with option of renewal for two more years, which lease was silent as to buildings tenant might erect thereon for use as gasoline filling station and real estate office, tenant *held*, entitled to remove structures composed of cement blocks and stucco with cement floors and on substantial concrete foundations, costing upwards of $5,000, it being unreasonable to find from lease that parties intended such use fixtures as a permanent accession to the freehold.

6. SAME—LANDLORD AND TENANT—ANNEXATION—INTENT.

As between landlord and tenant, the matter of annexation of use fixtures to the freehold is no longer of determining moment, intention on the part of the landlord and tenant constituting the main test (Per WIEST, BUTZEL, SHARPE and TOY, JJ.).

NORTH, C. J., and FEAD and BUSHNELL, JJ., dissenting.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted April 17, 1936. (Docket No. 30, Calendar No. 38,846.) Decided October 16, 1936.

Bill by Jane H. Cameron against Oakland County Gas & Oil Company, a Michigan corporation, and others to fix rental on a building, for an injunction restraining defendants from removing buildings and for other relief. From decree for plaintiff, defendants appeal. Reversed.

*Ralph E. Routier,* for plaintiff.

*Lynch & Lynch,* for defendants.

Potter, J. The contest in this case is between the landlord, the owner of leased premises, and the tenant who erected buildings thereon for the purpose of operating an oil and gas station. The lease contained no specific provision as to the ownership of the buildings at the expiration of the leasehold. The rights of the parties are governed by the applicable law.

The sole question involved is whether the tenant has a right to remove the buildings erected by him upon the leased premises, during the continuance of his lease or within a reasonable time after its expiration.

There is no claim the buildings were on the premises when leased or that the landlord contributed anything toward their building and erection. On the one hand, it is contended these buildings, having been structures more or less permanent, remain a part of the real estate and may not be removed. On the other, it is contended they were erected for the purpose of carrying on the business or trade of the tenant and may be removed by him.

In the early case of *Van Ness* v. *Pacard,* 2 Pet. (27 U. S.) 137, this question was before the Supreme Court of the United States, and in the opinion therein Mr. Justice Story reviewed the authorities. It is said, p. 143:

"The general rule of the common law certainly is, that whatever is once annexed to the freehold, becomes part of it, and cannot afterwards be removed, except by him who is entitled to the inheritance. The rule, however, never was, at least so far back as we can trace it in the books, inflexible, and without exceptions. It was construed most strictly between executor and heir, in favor of the latter; more liberally, between tenant for life or in tail and remainder-man or reversioner, in favor of the former;

and with much greater latitude, between landlord and tenant, in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant during his term, and were deemed personalty, for many other purposes. The principal cases are collected and reviewed by Lord Ellenborough in delivering the opinion of the court, in *Elwes* v. *Maw,* 3 East, 38 (102 Eng. Rep. 510) ; and it seems unnecessary to do more than to refer to that case for a full summary of the general doctrine, and its admitted exceptions, in England. The court there decided, that in the case of landlord and tenant, there had been no relaxation of the general rule, in cases of erections, solely for agricultural purposes, however beneficial or important they might be as improvements of the estate. Being once annexed to the freehold by the tenant, they became a part of the realty, and could never afterwards be severed by the tenant. The distinction is certainly a nice one between fixtures for the purposes of trade, and fixtures for agricultural purposes; at least, in those cases where the sale of the produce constitutes the principal object of the tenant, and the erections are for the purpose of such a beneficial enjoyment of the estate. But that point is not now before us; and it is unnecessary to consider what the true doctrine is, or ought to be, on this subject. However well settled it may now be in England, it cannot escape remark, that learned judges, at different periods, in that country, have entertained different opinions upon it, down to the very date of the decision in *Elwes* v. *Maw, supra.*

"The common law of England is not to be taken, in all respects, to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them

and adopted, only that portion which was applicable to their situation. There could be little or no reason for doubting, that the general doctrine as to things annexed to the freehold, so far as it respects heirs and executors, was adopted by them. The question could arise only between different claimants under the same ancestor, and no general policy could be subserved, by withdrawing from the heir those things which his ancestor had chosen to leave annexed to the inheritance. But between landlord and tenant, it is not so. clear, that the rigid rule of the common law, at least, as it is expounded in *Elwes* v. *Maw,* was so applicable to their situation, as to give rise to necessary presumption in its favor. The country was a wilderness, and the universal policy was, to procure its cultivation and improvement. The owner of the soil, as well as the public, had every motive to encourage the tenant to devote himself to agriculture, and to favor any erections which should aid this result; yet, in the comparative poverty of the country, what tenant could afford to erect fixtures of much expense or value, if he was to lose his whole interest therein, by the very act of erection? His cabin or log-hut, however necessary for any improvement of the soil, would cease to be his, the moment it was finished. It might, therefore, deserve consideration, whether, in case the doctrine were not previously adopted in a State, by some authoritative practice or adjudication, it ought to be assumed by this court as a part of the jurisprudence of such State, upon the mere footing of its existence in the common law. At present, it is unnecessary to say more, than that we give no opinion on this question. The case which has been argued at the bar may well be disposed of, without any discussion of it.

"It has been already stated, that the exception of buildings and other fixtures, for the purpose of carrying on a trade or manufacture, is of very ancient date, and was recognized almost as early as the rule itself. The very point was decided in 20 Hen. VII.

13 a and b, where it was laid down, that if a lessee for years made a furnace for his advantage, or a dyer made his vats or vessels to occupy [carry on] his occupation, during the term, he may afterwards remove them. That doctrine was recognized by Lord Holt, in *Poole's Case,* 1 Salk. 368 (91 Eng. Rep. 320), in favor of a soap-boiler, who was tenant for years. He held, that the party might well remove the vats he set up in relation to trade; and that he might do it by the common law (and not by virtue of any custom), in favor of trade, and to encourage industry. In *Lawton* v. *Lawton,* 3 Atk. 13 (26 Eng. Rep. 811), the same doctrine was held, in a case of a fire-engine, set up to work a colliery by a tenant for life. Lord Hardwicke there said, that since the time of Henry VII., the general ground the courts have gone upon, of relaxing the strict construction of law is, that it is for the benefit of the public, to encourage tenants for life to do what is advantageous to the estate, during the term. He added, 'one reason that weighs with me is, its being a mixed case, between enjoying the profits of the land, and carrying on a species of trade; and, considering it in this light, it comes very near the instances in brewhouses, etc., of furnaces and coppers. The case, too, of a cider-mill, between the executor and heir * * * is extremely strong; for though cider is a part of the profits of the real estate, yet, it was held by Lord Chief Baron Comyns, a very able common lawyer, that the cider-mill was personal estate notwithstanding, and that it should go to the executor. It does not differ in my opinion, whether the shed be made of brick or wood, for it is intended to cover it from the weather and other inconveniences.' In *Penton* v. *Robart,* 2 East, 88 (102 Eng. Rep. 302), it was further decided, that a tenant might move his fixtures for trade, even after the expiration of his term, if he yet remained in possession; and Lord Kenyon recognized the doctrine in its most liberal extent.

"It has been suggested at the bar, that this exception in favor of trade, has never been applied to cases like that before the court, where a large house has been built, and used in part as a family residence. But the question, whether removable or not, does not depend upon the form or size of the building, whether it has a brick foundation or not, or is one or two stories high, or has a brick or other chimney. The sole question is, whether it is designed for purposes of trade or not? A tenant may erect a large as well as a small messuage, or a soapboilery of one or two stories high, and on whatever foundations he may choose. In *Lawton* v. *Lawton, supra,* Lord Hardwicke said (as we have already seen), that it made no difference, whether the shed of the engine be made of brick or stone. In *Penton* v. *Robart, supra,* the building had a brick foundation, let into the ground, with a chimney belonging to it, upon which there was a superstructure of wood. Yet the court thought the building removable. In *Elwes* v. *Maw, supra,* Lord Ellenborough expressly stated, that there was no difference between the building covering any fixed engine, utensils, and the latter. The only point is, whether it is accessory to carrying on the trade or not. If *bona fide* intended for this purpose, it falls within the exception in favor of trade."

The rule thus established by the supreme court of the United States is the rule in relation to buildings of this kind.

In *District Township of Corwin* v. *Moorehead,* 43 Iowa, 466, plaintiff, with the consent of the defendant, built a frame schoolhouse one story high on land owned by defendant. The question was whether the plaintiff could remove it. The court said:

"If it is erected by the builder with his own money, and for his own exclusive use, as disconnected from the use of the land, and with an agreement to that effect between the owner of the land and the builder,

it will, as between the parties, be considered personal property.''

Plaintiff was held to have a right to remove the building.

In *Wilgus & Ewing* v. *Gettings & Giddings,* 21 Iowa, 177, defendants' grantors erected a slaughterhouse, sheds and pens upon the premises with the knowledge and assent of the agent of the owners. They sought to replevin the buildings, when a suit was brought to enjoin replevin. The court said:

''We place our decision of the cause upon the ground that the improvements or property in controversy were made and erected on the land, upon the faith of, at least, an implied license, given or sanctioned by the owner,'' and the persons. who erected the buildings were held entitled to remove them.

In *Rush County Board of Commissioners* v. *Stubbs,* 25 Kan. 322, plaintiffs owned a building one story in height used for county offices. They placed it upon a stone foundation on a tract of land which defendant afterwards acquired. Notwithstanding the building was erected on a stone foundation, it was held to remain personal property, subject to removal.

In *Wittenmeyer* v. *Board of Education of Brooklyn, Ohio,* 10 Ohio Cir. Ct. 119, a building was erected on leased land by a lessee for use as a schoolhouse. The court held this remained personal property, quoting with approval the language of Justice Story in *Van Ness* v. *Pacard, supra.*

In *Fuller* v. *Tabor,* 39 Me. 519, a dwelling house was erected upon the land of another who converted the building to his own use. Plaintiff sued in trover for its conversion and was held entitled to recover.

In *Central Branch R. Co.* v. *Fritz*, 20 Kan. 430 (27 Am. Rep. 175), where replevin was brought for a house, the court said:

"It has been held that a stone pier, 'firmly inbedded in the earth,' was under certain circumstances only personal property. * * * It has also been held that structures resting on solid foundations firmly imbedded in the earth, are sometimes only personal property. (*King* v. *Inhabitants of Otley, Suffolk,* 1 B. & Ad. 161 [109 Eng. Rep. 747]; *Wansborough* v. *Maton*, 4 Ad. & E. 884 [111 Eng. Rep. 1016]. Many American cases might also be referred to on this point, among which see, *Hartwell* v. *Kelly*, 117 Mass. 235; *White's Appeal*, 10 Pa. 252; *Adams* v. *Goddard*, 48 Me. 212; *Alexander* v. *Touhy*, 13 Kan. 64.) Even dwelling-houses, resting upon solid and firm foundations, are sometimes not a part of the realty, but only chattels."

In *Curtiss* v. *Hoyt*, 19 Conn. 154 (48 Am. Dec. 149), it was held that when a building is erected by the tenant with his own money and for his own exclusive use as disconnected from the use of the land, it is removable at his pleasure.

In *Doty* v. *Gorham*, 5 Pick. (27 Mass.) 487 (16 Am. Dec. 417), the plaintiff sued defendant for the removal of a shop from his property. The court said:

"The shop being erected for the purposes of trade, the tenant had a right to remove it at any time during the continuance of the estate. *Elwes* v. *Maw*, 3 East, 52 (102 Eng. Rep. 510). And had the landlord determined the estate, the tenant would have been entitled to sufficient time to remove his shop and other property."

In *Watriss* v. *First National Bank of Cambridge*, 124 Mass. 571 (26 Am. Rep. 694), the court held that the tenant had a right to remove fixtures at any time

during the continuance of his lease or within a reasonable time thereafter.

This is the rule recognized in 13 Am. & Eng. Encyc. of Law (2d Ed.), p. 650, and in 36 C. J. p. 176, § 827, where the later American authorities are collected.

The rule that buildings erected by a tenant upon leased premises at his own expense and for his own use and benefit may be removed at any time during the tenancy or within a reasonable time thereafter has been extended to dwelling houses as well as to schoolhouses, *Carpenter* v. *Smith,* 40 Mich. 639; *Harris* v. *Gillingham,* 6 N. H. 9 (23 Am. Dec. 701); *Ingalls* v. *Railway Co.,* 39 Minn. 479 (40 N. W. 524, 12 Am. St. Rep. 676; *Jewett* v. *Patridge,* 12 Me. 243 (28 Am. Dec. 173); *Osgood* v. *Howard,* 6 Greenl. (6 Me.) 452 (20 Am. Dec. 322); and to a dwelling house and barn, *Dame* v. *Dame,* 38 N. H. 429 (75 Am. Dec. 195); and to gas pipes laid in the public streets, *Providence Gas Co.* v. *Thurber,* 2 R. I. 15 (55 Am. Dec. 621); to a two-story oatmeal mill with a one-story brick addition, *Merchants' National Bank of Crookston* v. *Stanton,* 55 Minn. 211 (56 N. W. 821, 43 Am. St. Rep. 491); to saw mills, *Russell* v. *Richards,* 10 Me. 429 (25 Am. Dec. 254); to corncribs erected on the right of way of a railroad, *Fischer* v. *Johnson,* 106 Iowa, 181 (76 N. W. 658); to a frame building, *Osborn* v. *Potter,* 101 Mich. 300; to a barn, *Byrnes* v. *Palmer,* 113 Mich. 17; to other buildings, *Kerr* v. *Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362); to a shingle mill frame, *Bartlett* v. *Haviland,* 92 Mich. 552; to an extensive manufacturing plant, *Davidson* v. *Crump Manfg. Co.,* 99 Mich. 501; to engine and pump houses and residence buildings, *Conrad* v. *Saginaw Mining Co.,* 54 Mich. 249 (52 Am. Rep. 817); to schoolhouses erected under lease, *Hay-*

*ward* v. *School District No. 9, of the Township of Hope,* 139 Mich. 539.

The right of the tenant to remove the erections made by him in furtherance of the purpose for which the premises were leased is one founded upon public policy and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property the circumstances will admit of. *Kerr* v. *Kingsbury, supra; Manwaring* v. *Jenison,* 61 Mich. 117. Throughout all the lumbering regions of Michigan, saw mill operators erected engine and mill foundations of brick, stone and concrete, to which their machinery was attached, and this machinery was usually covered with buildings of a more or less permanent character; and no one ever contended that, though these buildings were erected upon land, the title to which was not in the saw mill builder or operator, he did not have a right to remove his mill when the timber was cut or removed from the premises.

The reason property of this kind is personal, rather than real, is based upon the rule the law implies an agreement that it shall remain personal property from the fact the lessor contributes nothing thereto and should not be enriched at the expense of his tenant when it was placed upon the real estate of the landlord with his consent. There is no unity of title between the owner of the land and the owner of the structures, and the buildings were not erected as permanent improvements to the real estate, but to aid the lessee or licensee in the use of his interest in the premises.

The decree of the trial court is reversed, with costs.

WIEST, J. (*concurring*).   I concur in the opinion of Mr. Justice POTTER.

The original lease was for a term of three years, from November 1, 1931, with an option of two years more, ending November 1, 1936.

The manager of defendant corporation testified that the building actually cost $4,600, and with oil tanks, pumps, air compressor and all else, the total cost was $5,175.   He also testified, on cross-examination, and so without objection, that it was agreed:

"I could build anything I wanted to and take them off."

Asked why such agreement was not put in the lease, he said:

"I don't know, I didn't do that very good, I guess, I thought we would get along fine."

Plaintiff denied any such agreement and testified that the lease was brought to her fully prepared for signature.

I do not think it can be said from the terms of the lease (evidently a layman's selection of a printed form) that the parties intended thereby to constitute the use fixtures a permanent accession to the freehold.

The matter of annexation of use fixtures to the freehold is no longer of determining moment.   Intention on the part of the landlord and tenant constitutes the main test.

The original term was short and the right of extension not long.   Expensive use fixtures were necessary and it does not appeal to my sense of reasoning that, for so short a period, the parties intended such use fixtures a permanent accession to the freehold.

BUTZEL, SHARPE and TOY, JJ., concurred with WIEST, J.

North, C. J. (*dissenting*). On November 1, 1931, plaintiff leased by written instrument a vacant lot in the city of Royal Oak to the Oakland County Gas & Oil Company, a Michigan corporation. It was provided that the lease was "for a term beginning the first day of November, 1931, and ending the first day of November, 1934, to be used and occupied only for gasoline and oil station and real estate office." For the first two years the rate of rental was fixed at $50 per month and for the third year $75 per month, payable monthly. The lease contained a further provision:

"And at the option of the lessee for a further term of two years, commencing November 1, 1934, and ending November 1, 1936, as follows: * * *

"It is understood and agreed between the parties of the first part and parties of the second part, that should the parties of the first part and the parties of the second part be unable to agree on a fair rental price at the expiration of a three-year term, then each party shall have the right to chose one man and they will decide on the amount of rent to be paid at that time, and the party of the first part and the parties of the second part will be agreeable to the amount of rent to be paid."

Shortly after the execution of the lease, the defendant took possession of the premises and constructed thereon a building. The circuit judge referred to this structure as two buildings one 18 x 20 feet used as a gasoline station; the other attached to it, being about 27 x 30 feet, a portion of which was used as a service station and the balance as a real estate office. The building rested on a substantial concrete foundation and was composed of concrete blocks and stucco, and had cement floors. Since the building was completed defendant has remained in possession. Prior to November 1, 1934, the defend-

ant company gave notice that it proposed to exercise the option for an additional two years under the lease. An attempt was made to fix the amount of rent to be paid, as provided in the lease, but there was failure to reach an agreement. On the 31st day of December, 1934, plaintiff filed her bill of complaint herein. She alleged that the defendant company was holding possession of the premises without right and that nothwithstanding plaintiff's attempt to agree upon a fair rental value for an extended period of the lease the parties had been unable to agree; and plaintiff further alleged that the lessee threatened to remove from the leased premises the gasoline service station erected thereon, together with the heating plant and other equipment. The relief sought by plaintiff is that she be decreed possession of the premises and in event of a failure of defendants to deliver up possession that a proper writ be issued to place her in possession; that the defendants be restrained from removing the buildings, etc., from the premises; and that in event the court finds that the term of the lease should be extended, the court decree and fix the rental value of the premises.

The defendants answered and after hearing in open court it was decreed that the rent for the extended period should be $100 per month from November 1, 1934, to November 1, 1935, and $125 per month from November 1, 1935, to November 1, 1936; and the injunctive relief sought was granted as to permanent structures and fixtures therein, but with a provision that "gasoline tanks, pumps and other trade fixtures" might be removed by the tenant at the expiration of the lease. The defendants have appealed claiming (1) that the rate of rental fixed by the court is too high and not supported by the evidence, and (2) that the court was in error in

restraining defendants from removing the buildings erected on the premises by the defendant company.

On the first of the above questions a detailed review of the testimony would be of no service. A controverted issue was presented to the court as to the fair rental value. All parties concerned acquiesced in submitting this issue to the court in chancery for determination. See *Bird* v. *Couchois,* 214 Mich. 607, 612. There was testimony submitted in behalf of the plaintiff which abundantly sustained the finding of the court that a fair rental value for the first of the two years of extension was $100 per month and for the second $125 per month. The decree in that particular must be affirmed.

Appellants' contention that the court was in error in granting the injunctive relief against removal of buildings constructed by the tenant on the leased property is the important issue presented on this appeal. Appellants assert in their brief:

"The buildings and other accessories in the way of heating apparatus, etc., put on the premises by defendant company are commonly called trade fixtures and are the property of defendants and they have the right to remove the same at the expiration of the lease."

Unfortunately the written lease contains no specific provision as to ownership of the buildings at the expiration of the leasehold. But as hereinafter noted the lease does contain some provisions which are at least indicative of what the parties had in mind when the lease was executed. The provision in the lease that the premises were to be used only for a gasoline and oil station and real estate office conclusively indicates that the contracting parties contemplated that suitable buildings were to be erected on the vacant lot. It is agreed that it was

understood that this was to be done by the lessee. But notwithstanding this, the lessee covenanted as follows:

"To observe all reasonable regulations and requirements of underwriters concerning the use and condition of the premises tending to reduce fire hazards and insurance rates."

There was hardly an occasion for such a provision except that the lessor had some sort of interest in the insured property, *i. e.* in the buildings. Further the lease provided if the premises were damaged by fire so they were partially untenantable "the landlord shall repair the same with all convenient speed, and the obligation of the tenant to pay the monthly rental shall continue in full force provided such repairs shall be completed within forty days."

Here again the provision of the lease quite decidedly indicates plaintiff's ownership of the buildings. Otherwise why should she undertake to repair in case of damage by fire? Also it is provided in the lease that in the event condemnation proceedings were commenced and prosecuted with the result that the tenant was totally or partially evicted, "this lease shall be void." This also indicates a lack of lessee's ownership of the buildings which in all probability would be affected by such condemnation proceedings. Another provision of the lease of like import may be noted. The lessee covenanted:

"To keep the premises, including the equipment and fixtures of every kind and nature, during the term in as good repair and at the expiration thereof yield and deliver up the same in like condition as when taken, reasonable wear thereof and damage by the elements excepted."

Since there could scarcely be damage by the elements to the vacant lot it is a fair inference that the

above provision for delivering up possession applied to the buildings erected on the lot, and it is therefore indicative of ownership in the lessor. In this connection see *Mayor, etc., of New York* v. *Hamilton Fire Ins. Co.,* 23 N. Y. Super. Ct. (10 Bosw.) 537, 546.

Notwithstanding the noted provisions of the lease may have been embodied in a printed form used, nonetheless such provisions must be held to constitute terms and conditions of the lease and, therefore, are pertinent in determining the rights of the respective parties. In this case, under the terms of the lease itself, notwithstanding it does not contain a specific undertaking that the lessee was to erect a building, as was provided in the following case, the language of a New York court seems applicable. It was there said:

"We think the future ownership of the building was in the contemplation of the parties at the time of its execution, and that, at the expiration of the term the plaintiffs became the owners of the superstructure erected in pursuance of the condition of the lease, a compliance with which alone rendered it operative in favor of the grantee." *Mayor, etc., of New York* v. *Brooklyn Fire Ins. Co.,* 41 Barb. (N. Y.) 231, 234.

In a decision of the New Jersey equity court arising from a similar situation as between lessor and lessee it was said:

"The lease, neither by express words nor by implication, reserves a right to the lessees to remove the building; and its silence in that regard would seem to render it almost as certain that the parties intended that no such right should exist as it is that they intended that the lessees, after paying the rent reserved by the lease, should have no right to reclaim the money. * * *

"Besides, I think the covenant defining what the lessees should surrender on the expiration of their term, and in what state and condition the demised premises should then be, furnishes very cogent evidence of the intention of the parties in respect to the building." *Deane* v. *Hutchinson,* 40 N. J. Eq. 83, 87 (2 Atl. 292, 295).

With much propriety it is stressed in appellants' brief that the rule of law, under which as between vendors and vendees or mortgagors and mortgagees structures which are firmly attached to the land pass with title to the land, is much less rigidly applied to rights of landlords and tenants. Appellants quote the following:

"The general rule respecting fixtures unquestionably is that whatever is once annexed to the freehold becomes part of it, and passes with the land. This rule obtains as between grantor and grantee, mortgagor and mortgagee, and persons sustaining certain other relations to each other. 1 Washburn on Real Property (4th Ed.), § 7. But there is an exception to the rule, which is probably as old as the rule itself, and which is applied as between landlord and tenant, to articles affixed by the latter to the premises for the purpose of carrying on the business for which the premises were leased. Such articles are denominated trade fixtures, and are removable by the tenant. (Citing several cases including *Conrad* v. *Saginaw Mining Co.,* 54 Mich. 249 [52 Am. Rep. 817]). And it does not matter much how firmly the articles may be attached to the land. In *Wiggins Ferry Co.* v. *Railway Co.,* 142 U. S. 396, 416 (12 Sup. Ct. 188) the court said: 'Whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent, and closely attached to the realty, placed there for the sole purpose of trade, may not be removed at the end of the

term.' The articles in question here were placed upon the mining premises for the purpose of carrying on the business for which the lease was taken,— that is, for the purpose of working the mine. It was by means of them that the operations which the lease authorized were to be conducted. They were, therefore, trade fixtures. That they were *intended* merely to facilitate the work in which the lessees proposed to engage under the provisions of their lease, and that it was not *their intention* to incorporate them into the realty, appears to us to be clearly evident from the facts." *Updegraff* v. *Lesem,* 15 Col. App. 297, 305 (62 Pac. 342).

The pivotal point in the instant case is this: Should the buildings erected by the lessee be held to be in the nature of trade fixtures and because thereof appellants held to have a right to remove them? We think not. In the absence of express controlling agreements relative to such rights, the courts, especially in border line cases, are constantly endeavoring to ascertain and give effect to the intent of the parties. In a case involving a small one-story building, without cellar or foundation except posts, this court, inquiring into the intent of the parties, said:

"It cannot be supposed that Parmenter, holding from month to month under a lease resting in parol, *intended* that the building he erected should become realty. He testified, and, if he had not, the inference would be unavoidable, that the building was a chattel and his property. The man who purchased it attorned to his landlord. There is no evidence here of his *intention* to abandon the building to the landlord or to the owner of the land." *Higginbotham* v. *Phillips,* 192 Mich. 49.

"Scales, gasoline tank, and pump, installed by the owner of the realty with the intention that they become part thereof, became fixtures and were subject

to the mortgage subsequently executed thereon."
*Tyler* v. *Hayward (syllabus)*, 235 Mich. 674.

See, also, *Conrad* v. *Saginaw Mining Co.*, 54 Mich.
249 (52 Am. Rep. 817); *Updegraff* v. *Lesem, supra;*
and *In re Shelar*, 21 Fed. (2d) 136. In this latter
case the court said:

"Mere attachment to real estate is no longer the
criterion; the parties here are in agreement that it
is not necessary that there should be a specific con-
tract with reference to the right of removal of a
trade fixture, and that the question must be deter-
mined *by the intention of the parties.* * * * The
tests were: * * *
"(3) The *intention* of the party making the an-
nexation, to be inferred from the nature of the arti-
cle affixed, the relation and situation of the party
making the annexation."

The authority last above quoted is applicable to
the instant case. Here the parties not only indicated
their intention by the above quoted portions of the
lease, but we think it is also indicated by the char-
acter of the buildings erected by the lessee, includ-
ing the type of foundation, the materials used in
and the method of construction; and that these as
well as other circumstances disclosed quite conclu-
sively negative any intent other than that the build-
ings were to be considered permanent fixtures upon
the land and, therefore, a part of the real property
rather than trade fixtures removable at the option
of the tenant. This being true it is of little im-
portance whether the buildings could be removed
without material injury to the realty. *Tyler* v. *Hay-
ward, supra.* In this connection it is worthy of no-
tice that the fair inference from the record is that
the character and construction of the buildings in
the instant case indicate that they would in all prob-

ability be of very little value for removal or wrecking purposes, but obviously they are of substantial value when left intact on the land. Also as bearing upon the intent of the parties we quote from the testimony of defendant Levy, the president and active manager of the Oakland County Gas & Oil Company:

"*Q.* Then the company claims ownership to the improvements and will remove them, the buildings and everything they have placed there, at the end of the term?

"*A.* I don't know whether they will or not, I couldn't tell you."

In view of the express provisions of the lease, and of the intent of the parties as disclosed by the record, appellants' contention that the buildings should be held to be in the nature of trade fixtures and, therefore, removable at the option of the lessee cannot be sustained. In arriving at this conclusion we have not overlooked the fact that among other authorities cited in support of appellants' contention the following decisions of this court are included: *Kerr* v. *Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362); *Osborn* v. *Potter,* 101 Mich. 300, and *Hayward* v. *School District No. 9, of the Township of Hope,* 139 Mich. 539. Neither of the first two cases just above cited lends support to appellants' contention because in each of them the lease expressly provided that the tenant might at the expiration of his lease remove buildings erected by him. Also decision in the *Hayward Case,* which involved the removal of a school house erected on leased land, is easily distinguished. There the lessee school district erected a frame school house for its particular purpose, which was an activity in which the landlord by no stretch of imagination could engage. The inference

of the right and intention of the tenant to remove the building at the expiration of the leasehold was plainly disclosed by the facts and circumstances of the case.

While lessee's manager testified that he was told by plaintiff, "I could build anything I wanted to and take them off," this testimony was specifically denied by plaintiff. In a case of this character the written agreements of parties and their conduct are more persuasive than oral testimony given by an interested party. The testimony before us in this case convincingly establishes the fair rental value of this property as being at least $125 per month. There is credible testimony tending to show the reasonable monthly rental value is $150. But during the first two years under this lease the rent was fixed at only $50 per month, for the third year at $75 per month, and for the fourth year, as determined by the court, at $100 per month. Hence it fairly appears that during the occupancy this lessee has paid less than the fair rental value by at least $2,700. The reasonable inference is that this is offset by the understanding and intention of the parties that the building in question was to remain on the land at the expiration of the lease.

The manager of the lessee corporation selected the blank form upon which the lease was prepared. He filled in the terms of the lease and, as thus prepared, it was signed by plaintiff. In the instant case we ought not to ignore the rule so many times stated by this court that the terms of a written instrument should be most strongly construed against the party who prepared it. I do not understand that a court is justified in ignoring the printed portion of a contract merely because a form is used and in part the contract is embodied in the printed form and in part in handwriting or typewriting. The contention that

the parties intended the lessee should have a right to remove the building from this property cannot be sustained unless we ignore the part of this contract requiring the lessee to carry insurance for the protection of the lessor, requiring the lessor to repair for the benefit of the lessee in case of damage by fire during the leasehold period, requiring the tenant to keep the premises in good repair and to yield possession, etc., and the further provision that in case of condemnation the lease shall become "void" without any provision that the tenant should share in such an award. This record sustains the trial judge's order enjoining appellants from removing the building from the premises.

The rights of defendants, other than the Oakland County Gas & Oil Company, are controlled by the legal aspects of the case hereinbefore considered and, therefore, there is no occasion for outlining in detail the character and extent of the interests of such other defendants. The decree entered in the circuit court should be affirmed, with costs to appellee.

FEAD and BUSHNELL, JJ., concurred with NORTH, C. J.