BIALLAS *v.* MARCH.

1. LANDLORD AND TENANT—TRADE FIXTURES—BUILDING USED AS DANCE HALL, RESTAURANT AND CONFECTIONERY.

Under 20-year written lease wherein it was provided that premises, consisting of a vacant lot, were to be occupied by lessee for a public dance hall, confectionery and restaurant, and returned in like condition as when taken, and lessee erected a building 40' x 75' in its main portion with an orchestra pit and 40' x 50' wing, costing between $9,000 and $10,000, which he occupied first as dance hall, confectionery and restaurant and, incidentally, a part for living quarters, and paid taxes and insurance thereon, the building was a trade fixture.

2. SAME—TRADE FIXTURES—ERECTION AND REMOVAL BY LESSEE.

Where a lease is silent as to the ownership of buildings to be erected by the lessee and such buildings are trade fixtures, the general rule is that the lessee may remove them during the term.

3. SAME—TRADE FIXTURES—REMOVAL—INTENT—METHOD OF ATTACHMENT.

In determining whether or not a building or trade fixture put upon leased premises by lessee may be removed by him during the term of the lease, the intention of the parties with respect thereto is controlling, not the method of attachment.

4. SAME—TRADE FIXTURES—REMOVAL DURING TERM OF LEASE.

A trade fixture installed by the lessee can be removed before the end of the term of the lease if there is nothing in the lease to the contrary.

Appeal from Charlevoix; Gilbert (Parm C.), J. Submitted April 14, 1943. (Docket No. 36, Calendar No. 42,248.) Decided May 18, 1943.

Bill by George Biallas and wife against Ray March to fix damages for failure to perform agreement, for an injunction restraining defendant from removing building, and for other relief. Decree for plaintiffs. Reversed.

*Rollie L. Lewis,* for plaintiffs.

*Benjamin V. Halstead,* for defendant.

BUTZEL, J. George Biallas and wife, plaintiffs, as lessors entered into a written lease with defendant as lessee for a vacant parcel of property consisting of a corner lot adjoining plaintiffs' property in Charlevoix county, Michigan, for a term of 20 years from and after March 25, 1935, the property "to be occupied for public dance hall, confectionery and restaurant." The rent for the entire term was the sum of "one dollar and other valuable considerations." The lease gave defendant an option to purchase the leased land "at a price favorably corresponding to sale price" and other values of lands in the vicinity of the leased premises. It further gave defendant an option to renew the lease on the same terms. It further provided that the lease should terminate immediately if beer or intoxicating liquors were sold on the premises covered by the lease. It contained a covenant forbidding assignment, transfer or subletting; also a provision that defendant would at his own expense during the continuance of the lease keep the premises and every part thereof in as good repair as when received and at the expiration of the lease, deliver up the property in like condition as when taken, reasonable use and damage by the elements excepted.

The land was unimproved when defendant took possession. There was nothing in the lease requir-

ing defendant to erect a building nor did the lease contain a provision as to the ownership of any building if erected. Defendant admits that the ''other valuable considerations'' referred to in the lease consisted of his oral agreement to conduct a public dance hall, confectionery and restaurant on the premises. Plaintiffs' main purpose in giving defendant the lease at a nominal rental was to create a new business that would attract prospective customers who might patronize plaintiffs' tavern business next to the leased property. Obviously defendant could not carry on the businesses referred to in the lease without erecting some kind of structure on the demised land. Thus defendant did erect a large building costing between $9,000 and $10,000. The dimensions of the main portion of the building were 40 by 75 feet, and in addition an orchestra pit 8 feet deep was built adjoining one end, making the total length of the building 83 feet. A wing to the building measuring 40 by 50 feet was also added. Defendant used part of the premises as his home. Defendant's business was not successful and the second season he turned the building into a skating rink. He also kept on the premises some sanding machines which he rented out. Evidently Biallas knew that defendant was not successful in his business enterprise for he did not object to defendant's conducting a skating rink because, as he stated, ''I figured that he (defendant) was going down and I was not going to be hard on him.''

The latter part of 1940, defendant offered plaintiffs $600 for a deed to the property. Plaintiffs refused to accept this amount. Defendant told plaintiffs that he was going to move the building off the property and for that purpose shortly thereafter he surveyed a neighboring lot owned by defendant's wife, her parents and another person, made excava-

tions thereon and constructed foundation walls. Plaintiffs made no effort to stop defendant while he was going to this expense, though they knew he intended to move the building from their land. However, when defendant commenced to move the building to the new premises, plaintiffs began the instant suit and obtained a temporary and permanent injunction restraining its removal. Defendant stated that as soon as he moved the building, he intended to surrender the lease to plaintiffs.

Defendant on appeal from decree for plaintiffs raises several questions, but the only one we need discuss is, Did defendant have the right to remove the building erected by him for the purpose of carrying on his business? We believe the building constitutes a trade fixture. Defendant was not obligated in the lease to erect a building though without one he could not run a dance hall, confectionery and restaurant. The building became a trade fixture and never lost its identity as such. The use of the building for living quarters was merely incidental. Defendant paid for the building. It was assessed to him and he paid the taxes on it. The building was insured by defendant, the loss being payable to him and his wife. Defendant paid the premiums. He agreed to surrender the premises at the expiration of the term in like condition as when taken, not as they would be if a building were subsequently erected. Where a lease is silent as to the ownership of buildings to be erected by the lessee, and such buildings are trade fixtures, the general rule is that the lessee may remove them. *Kerr* v. *Kingsbury*, 39 Mich. 150 (33 Am. Rep. 362). The case in many respects is like that of *Conrad* v. *Saginaw Mining Co.*, 54 Mich. 249 (52 Am. Rep. 817). Also, see *Higginbotham* v. *Phillips*, 192 Mich. 49. The law is fully set forth in *Waverly Park Amuse-*

*ment Co.* v. *Michigan United Traction Co.*, 197 Mich. 92. The intention of the parties, not the method of attachment, is controlling. The lessee did not covenant that he would remain in the specified businesses for the term of the lease.

Plaintiffs raise the further question as to whether, if we determine the building in question was a trade fixture, it may be removed before the expiration of the term of the lease. While a question might arise as to whether the building could be removed upon the surrender of the premises after the expiration of the lease, there is no question but that a trade fixture can be removed before the end of the term of the lease if there is nothing in the lease to the contrary. In view of our decision, it becomes unnecessary to discuss the question of the laches of plaintiffs.

The decree restraining the removal of the building is reversed and one may be entered dismissing the bill of complaint. Defendant will recover costs.

BOYLES, C. J., and CHANDLER, STARR, WIEST, and SHARPE, JJ., concurred with BUTZEL, J.

NORTH, J. (*concurring*). The prevailing opinion in *Cameron* v. *Oakland County Gas & Oil Co.*, 277 Mich. 442 (107 A. L. R. 1142), has established in this jurisdiction the controlling law applicable to this case, and necessitates reversal herein. For that reason I am constrained to concur in reversal.

BOYLES, C. J., and CHANDLER, STARR, BUSHNELL, and SHARPE, JJ., concurred with NORTH, J.