SMITH v. HEGARTY.

1. FIXTURES—STREETCAR BODY AS LUNCH COUNTER—ASSESSMENT AS REAL ESTATE.

Act of assessing officers in assessing as real estate a streetcar body with an attached lean-to which had been placed on landlord's city lot by tenant for his use as a lunch counter did not make it real estate.

2. SAME—REMOVAL OF BUILDINGS BY TENANT.

Where tenant under oral lease of vacant lot on month-to-month basis, after giving bond to remove structure at discretion of mayor and common council, placed a streetcar body and attached a lean-to, all of which rested on cedar and cement blocks, and to which sewer, water, gas, and electricity service

connections were made, the structure remained the personal property of the tenant, hence landlord was not entitled to injunction restraining removal of the structure.

3. TAXATION—SCAVENGER SALE—PERSONALTY—LANDLORD AND TENANT.

Landlord who had duty to pay taxes but failed to do so and then purchased the property at scavenger sale does not thereby obtain title to personal property located thereon (Act No. 155, Pub: Acts 1937, as amended).

Appeal from Wayne; Callender (Sherman D.), J. Submitted January 6, 1944. (Docket No. 47, Calendar No. 42,265.) Decided April 3, 1944.

Bill by Alexander Smith against William J. Hegarty for an injunction restraining defendant from moving a building. Decree for plaintiff. Defendant appeals. Bill dismissed.

*Russel J. Comer,* for plaintiff.

*Harry Z. Marx,* for defendant.

REID, J.   This is a bill to enjoin defendant, plaintiff's tenant, from removing a streetcar body from a lot owned by plaintiff. The structure was used as a lunch room, had been set on loose blocks and had a lean-to attached. Under the lean-to some of the supporting cement blocks had been lowered into the ground to make the lean-to come to the same level with the streetcar body. Plaintiff's lots are 129 and 130, Loire Lawn subdivision, in the city of Lincoln Park.

In December, 1935, defendant applied to the city for a permit so to locate his streetcar body. The request was granted by the city on condition that he post a bond of $500 to guarantee the removal of the

streetcar body at the discretion of the mayor and common council.

In May or June, 1936, pursuant to an oral agreement to rent lot 129 for $18 per month, defendant placed the streetcar body in position for the purpose of conducting a dining car and lunch counter business and caused sewer, water, gas and electrical connections to be made. The place opened for business about July 4, 1936.

Plaintiff, in his brief, says:

"Defendant and appellant was not to pay taxes on the land under the rental agreement."

The testimony was all to the same effect. Subsequently the buildings of defendant were extended onto adjacent lot 130, also owned by plaintiff, for an additional rental of $12 a month. No assessment was made on the building by the city of Lincoln Park for 1932 to 1937, inclusive, as real property but in the year 1938 the city assessor classified the buildings as real estate and placed an assessment of $100 on the buildings. The city assessor's testimony indicates that the assessment for 1938 on lot 129 was $1,050 on the land and $100 on the building, making a total of $1,150 on that lot. There was no assessment on the buildings, if any, located on lot 130.

The following is from the testimony of plaintiff:

"All during the time Mr. Hegarty occupied that lot I knew I had to pay the taxes. I was the owner of it and supposed to pay the taxes. I knew that by law the owner was required to pay the taxes. There was never any question in my mind that Mr. Hegarty should pay them. The $18 a month that was paid for the use of the property, with the exception of the time that this little additional $12 was paid, was for Mr. Hegarty's enjoyment of lot

129. He was not to pay anything extra or give me anything extra that I know of. * * * I never talked with Mr. Hegarty about the question of removal. No question of that kind was ever brought up. I didn't talk to him about the buildings becoming a part of the land there.''

The following is from the testimony of defendant:

''When I rented it, I informed him that this was a lunch car I wanted to put on. I told him it was an experiment, I didn't know how good it would be and if it didn't work out I wanted to move it off after. He said all right, as far as I could tell, it was O. K. with him. He never to my knowledge made claim to the ownership of the building. I always, while I occupied this lot, treated those buildings as personal property. The mover put them on there and he put some cedar blocks under it and put six under the car, and the little piece that I built onto it has some cement blocks laying under it, not cemented in any way, just laid under there loose to level it up. These blocks that I speak of are anchored in the ground. They are in the ground I would say around a foot, maybe 18 inches. They were just a little bit too long and instead of cutting them off we set them down a little bit. Then when I went in there I put sewer and water into the building. I would have to do that to use it for dining car purposes. I also tapped the gas main and put gas in. * * * When Mr. Smith bought the property back on land contract I again resumed payments to him for the ground rent. I had no conversation with him at that time that I particularly recall. * * * I never was assessed to my knowledge or nobody ever asked me about taxes. I never received a personal tax bill or real estate bill affecting that lot, either 129 or 130.''

In paragraph 5 of the bill of complaint it is recited ''that the relation of landlord and tenant be-

tween your plaintiff, Alexander M. Smith, and the defendant, William J. Hegarty, continued to exist up to the time of filing this bill of complaint.'' The bill was filed April 8, 1941. The hearing before the court concluded on December 22, 1941.

The trial judge made no findings of fact but ordered decree for plaintiff upon the conclusion of the hearing. The decree, filed January 5, 1942, itself contains no finding of any disputed fact in the case and enjoined defendant from the removal of the buildings from lots 129 and 130. Defendant appeals.

After viewing the testimony of both plaintiff and defendant, we conclude that the terms of the tenancy required that plaintiff pay the taxes in question, that, in practical effect, it was understood between the landlord and tenant that it was the landlord's duty so to do, and it was understood between the landlord and tenant that the tenant was renting the land for the express purpose of putting a streetcar body on the land in order to operate a restaurant and lunch counter business. Plaintiff declined to give defendant a lease so that defendant evidently became a tenant from month to month. It was understood between the parties, as we conclude from the testimony, that defendant had the right of removal.

The act of the assessor in assessing the building as real estate did not make it real estate. The style of the building would suggest its removability. The tenant remained in actual possession all the time the building has been so located. We have, therefore, simply the question of whether the placing of the streetcar body on the land by the tenant who had rented the lot from the owner for that purpose caused the building to become part of the real estate and, in law, not removable by the tenant as his property.

Plaintiff fails to cite any authority for the proposition that such a building placed upon the lot by the tenant would become the property of the owner of the lot without right on the part of the tenant to remove it. Defendant appropriately cites *Higginbotham* v. *Phillips,* 192 Mich. 49, 53:

"It cannot be supposed that Parmenter, holding from month to month under a lease resting in parol, intended that the building he erected should become realty. He testified, and if he had not, the inference would be unavoidable, that the building was a chattel and his property."

See, also, *Cameron* v. *Oakland County Gas & Oil Co.,* 277 Mich. 442 (107 A. L. R. 1142).

Plaintiff has not proven by a preponderance of the evidence that he is or has been the owner of the building. It is personal property. Persuasive of this conclusion is the fact that the building is an old streetcar moved onto the property, with an annex built on, to be used as a lunch car, that the defendant merely had an oral lease of the vacant lot from month to month on a monthly rental basis, that the building was not permanently affixed to the real estate, and that the defendant had given a bond to the city authorities before the lunch car was moved onto the vacant lot in 1936, guaranteeing to remove it at the discretion of the mayor and common council.

Plaintiff did not obtain title to any personal property by virtue of the scavenger sale * and the record fails to convince that plaintiff is the owner of this personal property. There is no merit in plaintiff's claim that he acquired ownership of the lunch car

---

* See Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, 1943, § 3723–1 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 7.951 *et seq.*).—REPORTER.

by purchase of the real estate from the State under the scavenger sale.

The defendant may have a decree dismissing the bill of complaint, with costs of both courts.

North, C. J., and Starr, Wiest, Butzel, Bushnell, Sharpe, and Boyles, JJ., concurred.