Fred SCHNAIBLE, d. b. a. Mr. Nifty One-Hour Cleaners and Louis H. Long, President of Mars One-Hour Cleaners, Plaintiffs and Appellants,

v.

CITY OF BISMARCK and Walter R. Hjelle, State Highway Commissioner for the State of North Dakota, Defendants and Appellees.

Civ. No. 9516.

Supreme Court of North Dakota.

Feb. 1, 1979.

Vogel Law Firm, Mandan, for plaintiffs and appellants; argued by Lawrence A. Dopson, Mandan.

Peter S. Pantaleo, Sp. Asst. Atty. Gen., Bismarck, for defendants and appellees.

SAND, Justice.

This case presents an issue of first impression before this court as to the compensability of trade fixtures removed by a tenant in a condemnation action. Fred Schnaible appealed from a partial summary judgment of the Burleigh County District Court denying him compensation for dry cleaning equipment he owned in connection with a business located on property condemned by the North Dakota Highway Commissioner. The district court stated that by removing the equipment and ac-

cepting a relocation payment under § 54–01.1–03 of the North Dakota Century Code, Schnaible was not entitled to additional compensation for the decrease in the value of the equipment resulting from the condemnation and removal. We reverse and remand.

On 2 September 1976, the North Dakota State Highway Commissioner condemned property leased by Schnaible, d. b. a. Mr. Nifty One-Hour Cleaners, for a Bismarck street improvement project. A deposit of $3,429 was made with the clerk of the district court as an offer to Schnaible of full compensation for the taking or damaging of his property which was stated to be a sign. Schnaible appealed the condemnation to the district court pursuant to § 24–01–22.1 and chapter 32–15, NDCC.

Following Schnaible's filing of appeal to the district court, considerable discussion between the parties ensued concerning the compensable nature of equipment owned by Schnaible. In an affidavit filed in resistance of the motion for partial summary judgment, Schnaible stated he was told by Highway Department personnel on a number of occasions that the equipment was personal property for which he would receive no compensation if it remained in the building. This was not disputed by the Commissioner or the City in this case.

According to the affidavit, Schnaible was told the only compensation he was entitled to, other than for the sign, was for relocation under chapter 54–01.1, NDCC. Schnaible stated that relying on those assertions, he removed his dry cleaning equipment from the condemned premises in December 1976. Because of the age and nature of the equipment and particularly because of changes in zoning laws and building codes, Schnaible said he is prohibited from relocating the equipment in a new business. Consequently, the equipment has been in storage since its removal and has a market value only as scrap.

On 12 May 1977, Schnaible accepted a payment of $6,012 made pursuant to the North Dakota model relocation assistance act and designated as "[c]onsideration for 'in lieu' payment for moving personal prop-

erty, storage and the disconnection and reconnecting of all appliances associated with this dry cleaning business." Schnaible argued he accepted the relocation payment only on the assurance of Highway Department personnel that acceptance did not affect his right to seek damages for his equipment in a condemnation proceeding.

Schnaible continued to assert his right to compensation for the decreased market value of the equipment. On 6 October 1977 the Highway Commissioner entered into a stipulation with Schnaible stating Schnaible had a compensable interest in 26 items; such items being, for the most part, the pieces of dry cleaning equipment removed and stored by Schnaible.

On 30 December 1977, the Highway Commissioner moved for partial summary judgment asserting trade fixtures were not compensable in a condemnation proceeding if they were removed, and that Schnaible also waived his right to compensation by accepting relocation benefits under § 54–01.1–03, NDCC. The district court granted the motion for partial summary judgment and Schnaible appealed, presenting the following issues:

(1) Is a condemnee entitled to compensation for the diminution in the value of trade fixtures removed by the condemnee subsequent to the condemnation;

(2) Does acceptance of a relocation payment under § 54–01.1–03, NDCC, preclude a condemnee from seeking compensation in eminent domain proceedings for diminution in the value of the property removed.

On appeal no one argued the pieces of equipment removed by Schnaible were not trade fixtures at the time of condemnation and up until the time of their removal. The stipulation that Schnaible had a compensable interest in the equipment in place conceded the issue. The trial court found the equipment to be trade fixtures in its order approving that stipulation. In addition, it is apparent by the nature of the pieces of equipment that they were trade fixtures. Although, whether or not an item is a trade fixture depends on the

facts and circumstances of each particular case, the Michigan supreme court has summarized three general tests to be applied in determining if an item is a trade fixture. Those considerations are:

"First, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and, third, intention to make the article a permanent accession to the freehold." *Morris v. Alexander*, 208 Mich. 387, 175 N.W. 264, 265 (1919).

In the present case, the removed pieces of equipment meet all three tests of being trade fixtures: they were annexed to the realty, used in the dry cleaning business to which the premises were dedicated, and apparently placed there with the intention they would remain attached throughout their useful life.

 Generally, items of personal property annexed to realty are regarded as a part of the realty and are termed fixtures. Under § 47–06–04, NDCC, when a person affixes his property to the realty of another without an agreement permitting him to remove it, the fixture belongs to the owner of the realty. Section 47–06–04, NDCC, also provides for the general exception that in the absence of a special agreement to the contrary, a tenant may remove trade fixtures annexed by him to the leased premises any time during the continuation of the lease provided such removal can be made without injury to the leased premises. Thus between landlord and tenant the fixtures remain personalty. This exception, however, exists only for the benefit of the tenant and does not inure to the benefit of the condemnor. Consequently, as to the

condemnor the trade fixtures are considered as realty for which the condemnor must make just compensation if the fixtures are taken or damaged. Nichols on Eminent Domain, § 13.121[2], p. 13–53.

The Highway Commissioner argued that when trade fixtures are severed from the realty they become personal property both as between the tenant and landlord, and between the tenant and condemnor. The Highway Commissioner then applied the general rule that items of personal property [1] are not compensable in an eminent domain action. Schnaible, the Highway Commissioner asserted, made an election to have the dry cleaning equipment treated as personal property in the condemnation when he had it removed from the condemned premises and thus was not entitled to compensation for the decreased market value of that equipment.

 The determination if items are fixtures or personal property is a question of law. *Gurwitz v. State*, 27 Misc.2d 731, 211 N.Y.S.2d 641, *aff'd* 15 A.D.2d 712, 223 N.Y.S.2d 854 (1961); 29A C.J.S. *Eminent Domain* § 175(1). It has been held, however, that items claimed to be fixtures by tenants can be found to be compensable fixtures only if they were left on the condemned premises by the tenant or voluntarily released to him after the appropriation. By moving the alleged fixtures, the tenant acts as judge and jury in classifying the property removed as personal property. He determines for himself the character of the property; he decides it is removable; that it is a piece of personalty. Treated as such, removed trade fixtures have been held not compensable in a condemnation action. *Gurwitz v. State, supra; Rose v. State*, 24

---

**1.** We point out § 14 of the North Dakota Constitution which provides "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made . . ." does not distinguish between real and personal property. Also, § 1–01–49, NDCC, defines property as including both real and personal property. Although we can find little reason to deprive a property owner of compensation for personal property damaged as the result of a condemnation action, we decline to decide the issue until it is properly

before us and adequately briefed by both parties. See, *Stroh v. Alaska State Housing Authority*, 459 P.2d 480 (Alaska 1969); *City of Algonac v. Robbins*, 69 Mich.App. 409, 245 N.W.2d 69 (1968); *Forst v. Sioux City*, 209 N.W.2d 5 (Iowa 1973).

Exclusion of personal property in some jurisdictions as compensable property in eminent domain proceedings most likely rests at least partially on the ease with which personalty can be moved or removed from the condemned premises.

N.Y.2d 80, 298 N.Y.S.2d 968, 246 N.E.2d 735 (1969); Nichols on Eminent Domain, § 5.83[1], p. 5–431.

Under the above rule the tenant runs a risk in deciding whether or not to remove property that may be trade fixtures. If he removes the property, it will be treated as personalty and he will not be compensated for a loss of value. If he leaves the property behind, he risks the chance it will be found personalty with no right to compensation.

■ Schnaible stated in his affidavit in support of his motion to resist partial summary judgment, that Highway Department personnel informed him his equipment was personal property for which he would receive no compensation if it was left in the condemned premises. Courts have held that when a tenant removes his fixtures from the condemned premises because of the practical compulsion of the condemnor in taking the position it will not pay the condemnee for them, there has been no election and the condemnee is entitled to receive compensation for any loss in value. 29A C.J.S. *Eminent Domain* § 175(2). See also, *City of Buffalo v. Micheal,* 16 N.Y.2d 88, 262 N.Y.S.2d 441, 209 N.E.2d 776 (1965); Nichols on Eminent Domain, § 5–83[1], p. 5–431.

The Highway Commissioner argued the above rule is not applicable because Schnaible was represented by counsel at all stages of the condemnation. It asserted that because Schnaible had counsel, he cannot state he relied on the advice of Highway Department personnel who are not attorneys. The Commissioner's argument is unpersuasive. Even for a period of time after the dry cleaning equipment was removed, the position of the Highway Department was that the dry cleaning equipment was not compensable. The Commissioner only later conceded that had the equipment remained on the premises, it would have been deemed trade fixtures for which Schnaible would have been entitled to compensation.

■ The government's interest in an eminent domain action is to provide the condemnee with just compensation for property taken or damaged, neither more nor less. *United States v. Certain Property, Etc.,* 306 F.2d 439 (2d Cir. 1962). When a government becomes over-zealous in its protection of government funds, it uses the constitution and statutes of this state as a weapon to exact a sacrifice from the very persons whose rights those laws were intended to protect. The nature of the property and the ability to use it at another location puts this property in a unique situation. Under these circumstances and especially where the issue of compensation was an open question we will not allow the government to rely on the fact a property owner was represented by counsel to extinguish its duties in providing the condemnee with just compensation.

■ The determination of whether or not items are trade fixtures is a question of law based upon the facts as they existed at the time of the condemnation. *City of Fenton v. Lutz,* 73 Mich.App. 117, 250 N.W.2d 579 (1977); *Rose v. State, supra; Gurwitz v. State, supra*; 29A C.J.S. *Eminent Domain* § 175(1). Unlike the constitutions of many eastern states, including that of New York, our constitution provides a property owner shall receive just compensation for property "taken or damaged," not just for property "taken." N.D.Const. § 14. Generally, if the tenant, as a result of a condemnation, removes the trade fixtures in which he has a compensable interest the condemnor technically has not taken the property (trade fixtures) and the tenant would not be entitled to compensation on the basis that there was no taking, but such removal does not necessarily mean the fixtures have not been damaged as a result of the condemnation for which the tenant should receive compensation in accordance with our constitutional provision.

■ If a tenant had a compensable interest in items of property at the time of the condemnation, and if those items of property were damaged as a result of the condemnation, the tenant should not be denied compensatior for those damages simply because he removed the property from the condemned premises. His loss is no less because he chooses to remove the property.

There is no logical reason to penalize a condemnee because he chooses to salvage items of property at his own expense rather than leave it behind to become the condemnor's economic burden to remove. As a practical matter, fixtures left behind are generally of little value to the condemnor and are frequently an expense. It is not only illogical but uneconomical to compel a condemnor to assume the expense of disposing of items of property in a situation where the condemnee is willing to undertake the burden, See, *Housing Authority of the Borough of Clementon v. Myers*, 115 N.J.Super. 467, 280 A.2d 216 (1971).

■ In deciding if a condemnee is entitled to compensation for damaged fixtures which are removed, the election of whether or not such fixtures will be removed is not solely that of the condemnee. If the condemnor is willing to pay for the value of the fixtures in place rather than their decreased value as a result of removal, the election of whether or not the property will be removed may become that of the condemnor by including such items in the condemnation order. Certainly, the condemnor should not be required to pay more for damages as the result of condemnation and removal than the value of the property in place.

This court discussed the matter of compensation for damages to fixtures in *Gussner v. Mandan Creamery & Produce Co.*, 78 N.D. 594, 51 N.W.2d 352 (1952). We stated in that case, 51 N.W.2d at page 359:

"We do not believe it is incumbent upon or even proper for this court to decide that where fixtures have been wrongfully removed or destroyed, either one method or the other shall always be used in determining the amount of detriment suffered. The true rule should be that the method best suited for measuring the loss in the particular circumstances of the case should be the one to use used. [Citations omitted.]"

■ We point out, however, that as a general rule the measure of damages for trade fixtures which can be removed without substantial injury to the freehold and to which the tenant has a right of removal, is the difference in value between the trade fixtures in place and their salvage value as severed. This test does not indicate the items can only be used for scrap purposes, but rather takes into account the value of the property in a definable secondhand market for such used equipment. See, *Rose v. State, supra*; Nichols on Eminent Domain, § 13.121[2], p. 13–54. As was stated by the Second Circuit Court of Appeals in *United States v. Certain Property, Etc., supra*, at page 453:

"The court should not be concerned that valuation on this basis may produce a figure larger than what might be paid for the building, with all the fixtures in place, by a single purchaser who might not be interested in many of them; each owner, landlord or tenant, is entitled to the value of what the Government took from him."

■ We next reach the issue of whether or not Schnaible's acceptance of a relocation payment under § 54–01.1–03, NDCC, waived his right to compensation in an eminent domain proceeding. Section 54–01.1–03, NDCC, provides:

"1. If an agency acquires real property for public use, it shall make fair and reasonable relocation payments to displaced persons and businesses as required by this chapter for:

a. Actual, reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

b. Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the agency; and

c. Actual, reasonable expenses in searching for a replacement business or farm.

"2. Any displaced person eligible for payments under subsection 1 of this section who is displaced from a dwelling and who elects to accept

the payments authorized by this subsection in lieu of the payments authorized by subsection 1 of this section may receive a moving expense allowance, determined according to a schedule established by the agency, not to exceed three hundred dollars, and a dislocation allowance of two hundred dollars.

"3. Any displaced person eligible for payments under subsection 2[2] of this section, who is displaced from his place of business or from his farm operation and who elects to accept the payment authorized by this subsection in lieu of the payment authorized by subsection 1 of this section, may receive a fixed payment in an amount equal to the average annual net earnings of the business or farm operation, except that such payment shall not be less than two thousand five hundred dollars, nor more than ten thousand dollars. In the case of a business, no payment shall be made under this subsection unless the agency is satisfied that the business:

a. Cannot be relocated without a substantial loss of its existing patronage; and

b. Is not a part of a commercial enterprise having at least one other establishment not being acquired by the agency, which is engaged in the same or similar business.

For purposes of this subsection, the term 'average annual net earnings' means one-half of any net earnings of the business or farm operation before federal and state income taxes during the two taxable years immediately preceding the taxable year in which the business or farm operation moves from the real property acquired for such project, or during such other period as the agency determines to be more equitable for establishing such earnings, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such period."

The North Dakota Highway Commissioner contended the allowance of compensation to Schnaible in eminent domain proceedings, and under § 54–01.1–03, NDCC, is double compensation for the same injury. We agree with the Highway Commissioner that Schnaible is not entitled to double compensation for the same taking or damage, however, we do not agree the compensation Schnaible is entitled to under § 54–01.1–03 is for the same damage he seeks compensation for in eminent domain proceedings.

The compensation Schnaible is entitled to in eminent domain proceedings is for damages suffered to his property as a result of the condemnation; i. e., the difference in its value in place and as severed from the realty. Although there is authori-

**2.** The reference to subsection 2 in subsection 3 is erroneous as the reference should be to subsection 1. The erroneous reference would provide in lieu payments under subsection 3 only where a person is displaced from his dwelling, and his business, and also meets the requirements of subsection 1. Clearly this was not what the Legislature intended, but rather that a person who is eligible for relocation expenses under subsection 1 and is displaced from his place of business may accept payment under subsection 3 in lieu of payment under subsection 1.

That the reference is misplaced is also obvious from the legislative intent. The bill analysis for H.B. 1037 and the minutes of the Judiciary Committee in considering the same bill, 8 January 1973, state United States Public Law 91–646 served as the basis for H.B. 1037 which is now Chapter 54–01.1, NDCC. Subsection (c)

of Public Law 91–646, Title II, § 202, January 2, 1971, 84 Stat. 1895, is found at 42 U.S.C.A. § 4622 and is nearly identical to § 54–01.1–03, NDCC. The error appears to be the result of an altered numbering system in the state statute from that of the federal statute from which it was taken. As was stated by this court in syllabus ¶ 7 of *City of Dickinson v. Thress*, 69 N.D. 748, 290 N.W. 653 (1940):

"Where it is manifest upon the face of a statute that an error has been made in words, numbers, grammar or punctuation, the court, in construing and applying the statute, will correct the error in order that the intention of the Legislature as gathered from the entire act may be given effect."

Accordingly, we construe the reference to subsection 2 in subsection 3 should be to subsection 1. See also, *State v. Rudolph*, 260 N.W.2d 13 (N.D.1977).

ty to the contrary, the cost of removing fixtures is not a separate element of damages a property owner is entitled to in an eminent domain proceeding. *Dyer v. Commonwealth*, 396 Pa. 524, 152 A.2d 760 (1959); *City of Algonac v. Robbins, supra*. But see, Nichols on Eminent Domain, § 13.13, p. 13–59 and § 14.2471[2], p. 14–312. Although removal costs may well be an element affecting the value of severed fixtures, *Dyer v. Commonwealth, supra*, to allow such costs is not justified as removal of property is neither an element of taking or damaging such property and a verdict allowing for such costs would necessarily be based upon conjecture and speculation as one tenant might relocate its property within a few feet while another might move his property a distance of miles. *Springfield Southwestern Ry. Co. v. Schweitzer*, 173 Mo.App. 650, 158 S.W. 1058 (1913); Nichols on Eminent Domain, § 14.2471[2], p. 14–308. Thus the amount of removal costs are based upon the whim of the individual owner rather than damages suffered to the property.

Section 54–01.1–03, NDCC, however, provides for compensation for relocation costs, or payments in lieu thereof, and appears to be intended to protect the economic position of the condemnee by making it possible for him to relocate his business elsewhere with the least burden possible, or receive compensation where relocation is impossible. Where compensation has been received for property damaged, the statute does not prohibit compensation for the relocation of the same property.

There may be instances in which an economic loss could conceivably be compensable under both § 14, N.D.Const., and chapter 54–01.1; it does not necessarily follow that compensation under one excludes compensation under the other. Where compensation under Ch. 54–01.1 arises from the same injury for which compensation was awarded under § 14, N.D.Const., however, the property owner is not entitled to be doubly compensated through a payment under the statute. But where the basis for compensation arises from a different injury or theory, the property owner is not precluded from seeking compensation under both § 14, N.D.Const., and Ch. 54–01.1.

In this case, the compensation Schnaible was entitled to in eminent domain proceedings arose as the result of a different economic loss than that for which he was awarded the "in lieu" of relocation payment. Had Schnaible elected to remove his trade fixtures but had been unable to prove a difference in the value of the fixtures in place and severed, he would still be entitled to compensation for the removal of the fixtures even though he would not have received compensation in condemnation as there were no damages to the fixtures. In fact, where the trade fixtures are readily removed and saleable, this will be the usual situation. We can find no basis for a distinction in awarding or denying benefits under § 54–01.1–03, NDCC, on the premises of whether or not the property to be removed was damaged.

Subsection 3 of § 54–01.1–03 is referred to as an "in lieu" section as it provides for payments in lieu of the actual cost of relocation. Before payments can be made under this section the agency must be satisfied the business cannot be relocated without a substantial loss of patrons. The North Dakota Highway Commissioner apparently made that determination when he awarded Schnaible payments under § 54–01.1–03(3). Such a determination does not necessarily mean the property itself can't be removed by the property owner or that he can't receive compensation for damages arising as a result of removal. It simply means the business can't be relocated profitably. To conclude that a property owner cannot remove his property after accepting an in lieu payment under subsection 3 of § 54–01.1–03 would result in an effective taking of the property which is not permissible without paying for such property and which was not done in this case as the property was not included in the condemnation order.

Schnaible was entitled in the eminent domain action to the difference in value of his fixtures in place and as severed. He was also entitled to payment under

§ 54–01.1–03 for the removal of those same fixtures. He did not waive his entitlement to compensation under § 14, N.D.Const., because of his acceptance of payment under § 54–01.1–03, as the compensation under the latter was for a separate and distinct economic loss.

On the basis of the Highway Department's misinterpretation of the compensability of Schnaible's dry cleaning equipment, the obvious damages arising as the result of the condemnation and prior change in zoning and building codes, that compensability is determined at the time of condemnation and that acceptance of an "in lieu" of relocation payment does not waive entitlement to compensation for damages in an eminent domain action, the partial summary judgment against Schnaible was improper.

Reversed and remanded for a trial on the issue of damages suffered to Schnaible's trade fixtures.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.