[No. 5221-4-III.   Division Three.   June 12, 1984.]

LIBERTY LAKE SEWER DISTRICT No. 1, *Respondent,* v.
LIBERTY LAKE UTILITIES COMPANY, INC.,
ET AL, *Appellants.*

*Joseph P. Delay, Matthew Sanger,* and *Delay, Curran, Thompson & Pontarolo,* for appellants.

*D. Roger Reed, Timothy J. Giesa,* and *Reed & Giesa,* for respondent.

McINTURFF, J.—Delbert and Betty McHenry, husband and wife, and Donald McHenry, former shareholders and trustees of the assets of the Liberty Lake Utilities Co., Inc. (Corporation), appealed a declaratory judgment holding the Corporation had breached its agreement to tender to the Liberty Lake Sewer District (District) marketable title to its assets. We remanded to the trial court for a hearing and the entry of findings of fact and conclusions of law on the issue of the ownership of certain water mains covered by the sale agreement. *Liberty Lk. Sewer Dist. 1 v. Liberty Lk. Utils. Co.,* 35 Wn. App. 1015 (unpublished opinion filed June 28, 1983). This court retained jurisdiction of the appeal to review the Superior Court's actions and any undecided issues. After reviewing the record on remand and the findings and conclusions of the Superior Court, we hold the McHenrys have marketable title to the assets in question and have not breached the sale agreement. Accord-

ingly, we reverse the declaratory judgment of the Superior Court and order the District to perform its portion of the agreement.

The appeal stems from a dispute in 1980 between the Corporation and the District over the right to provide water service to the Hewlett–Packard plant then under construction in the area north of Liberty Lake. The District's commissioners decided to resolve the problem by purchasing the Corporation's water system. To avoid condemnation proceedings, the District and the Corporation entered into a sale agreement which left the purchase price to be determined by binding arbitration. In the agreement, the Corporation's shareholders covenanted that "the Corporation holds all title, interest and any claims whatsoever to the water system, easements, fixtures, pipes, pumps and all personal property attached thereto . . ." The agreement was signed by the District's commissioners, by Delbert McHenry, the Corporation's principal shareholder, and by Mr. McHenry's wife and brother, each owning one share.

The arbitration hearing was held in June 1981, at which time it first was learned that Liberty Lake Utilities Co.'s corporate existence had expired in 1973.[1] The District agreed to accept transfer of the assets from the individual shareholders as trustees for the Corporation's property.

The arbitrators included one person chosen by Mr. McHenry, one person chosen by the District, and a third person, William Bantz, appointed by the Superior Court on petition of both parties. On July 7, 1981, the arbitrators issued their decision, stating:

> The issue involved in this arbitration was to determine the fair market value of the business and assets of Liberty Lake Utilities Co., Inc., which is composed of the water system of Liberty Lake, including all of the well sites, pumps, and necessary equipment thereto as well as all pipes, fittings, meters, easements and real property necessary for the operation of said system . . .

---

[1] The original articles of incorporation, filed in 1923, specified a 50–year existence for the Corporation.

. . .
Stock at hand was valued at $26,931.66 . . .

The valuation of the Liberty Lake Utilities Co., Inc.
business and assets, including all well sites, buildings,
pipes, pumps, easements, tanks, etc., and other land rel-
ative to the system . . . is the sum of $712,818.00 . . .
[Total due to be paid is $739,749.66.]

This award was substantially greater than the $200,000
estimated by the District's appraiser, but less than the
$1,200,000 estimated by the Corporation's appraiser.

On July 10, 1981, the McHenrys moved in Superior
Court for an order confirming the arbitration award. Mr.
McHenry then tendered the District a statutory warranty
deed for the water system's assets. The District refused to
accept the deed, stating Mr. McHenry lacked marketable
title. It moved for an order granting the following declara-
tory relief:

(a) That the Liberty Lake Utilities Co.'s tender of
marketable title is a condition precedent to the Liberty
Lake Sewer District's obligation to perform under the
sale and arbitration agreement.

(b) That the Liberty Lake Utilities Co. does not have
and has failed to tender marketable title to the water
mains and pipelines of certain subdivisions as agreed to
in the sale and arbitration agreement and as required by
law.

(c) That the failure of the Liberty Lake Utilities Co. to
so tender marketable title is a substantial breach of the
sale and arbitration agreement.

(d) That as a result of the Liberty Lake Utilities Co.'s
failure to perform the Liberty Lake Sewer District's obli-
gation to perform under the sale and arbitration agree-
ment has never matured.

On November 10, 1981, the court signed findings of fact,
conclusions of law and declaratory judgment granting the
relief sought.

In the appeal, the District took the position that the
water mains in the county rights of way used by the Cor-
poration in its business were fixtures owned by the abutting
landowners, not personalty of the Corporation. The Supe-

rior Court, in entering the declaratory judgment, concluded the pipes were fixtures, but its findings did not address the criteria for determining whether an article is a fixture under Washington law. We remanded for a hearing and the entry of findings and conclusions on this issue.

The criteria for a fixture are:

(1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.

*Oden v. Seattle,* 72 Wn.2d 221, 225, 432 P.2d 642 (1967) (citing *Parrish v. Southwest Wash. Prod. Credit Ass'n,* 41 Wn.2d 586, 589, 250 P.2d 973 (1952)). Of these, the intention of the annexor is the most important. *Strong v. Sunset Copper Co.,* 9 Wn.2d 214, 230, 114 P.2d 526, 135 A.L.R. 423 (1941) (quoting from *Reeder v. Hudson Consol. Mines Co.,* 118 Wash. 505, 203 P. 951 (1922); *Kane v. Timm,* 11 Wn. App. 910, 912, 527 P.2d 480 (1974)). Intent is determined from the circumstances surrounding the annexation, including the nature of the article affixed, the annexor's situation in relation to the freehold, the manner of annexation, and the purpose for which it was made. *Kane,* at 912–13 (quoting from *Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 663, 161 P. 478 (1916)). The test is objective rather than subjective intent. *Department of Rev. v. Boeing Co.,* 85 Wn.2d 663, 668, 538 P.2d 505 (1975). When a person with no interest in the land affixes an article thereto in the furtherance of his own purposes, the presumption is that he intends to reserve title to the chattel in himself. *See Strong v. Sunset Copper Co., supra* at 230; *Dunsmuir v. Port Angeles Gas, Water, Elec. Light & Power Co.,* 24 Wash. 104, 117, 63 P. 1095 (1901); *Cherokee Pipe Line Co. v. Newman,* 593 P.2d 90, 92 (Okla. 1979); *Sulphur Springs Vly. Elec. Coop., Inc. v. Tombstone,* 1 Ariz. App. 268, 401 P.2d 753, 758 (1965). *See also* 5 *American Law of Property* § 19.10 (A. Casner ed. 1952). Generally, an agreement that

chattels affixed to realty shall retain their character as personalty may be either in writing or parol. *Boeringa v. Perry,* 96 Wash. 57, 59–62, 164 P. 773 (1917).

On remand, the Superior Court was provided testimony and other evidence concerning the circumstances of the pipes' installation. In general, the evidence was that Mr. McHenry installed the pipes at the developers' request and, in many instances, at their expense. The developers made no claim to the pipes, and Mr. McHenry kept them in repair. Significantly, the installations were done by Mr. McHenry pursuant to either oral or written agreements that Mr. McHenry would own the pipes upon installation.

Mr. McHenry also testified, as an experienced water purveyor, that it is customary for the developer to pay the costs of installing the water mains and for the purveyor to assume ownership of the mains upon completion and acceptance. Joseph Custer, general manager for Vera Water & Power District in the Spokane Valley, and Tommy Justus, regional engineer for the Department of Social and Health Services, corroborated his testimony. But Barbara Wiles, president of Gig Harbor Water Co., testified on behalf of the District that in her experience there was no such transfer of ownership absent formal documentation.

Mr. McHenry said his purpose in installing the water systems in question was to create revenue for his company and that he had maintained the lines over the years and paid annual personal property taxes on the pipes.

The Superior Court found "Mr. McHenry had agreements or understandings with all the developers . . . that once he installed pipes or took over a system as purveyor he was to be the owner of the pipes in question." The court further found the custom in the area was that "When the purveyor installs the pipes personally, that title to the pipes in question, whether paid for by the developers or by the purveyors, becomes the property of the purveyor as soon as the line [*sic*] are delivered to the site and installed ready for use." Finally, the court found "Mr. McHenry put in every foot of installation of pipes in his area except for

some pipes in the Follger and McKie easements", and his "purpose in putting in the lines was not to benefit the abutting property but to extend and enhance his water system."

The record, as detailed above, contains substantial evidence in support of these findings, and we therefore will not disturb them on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The foregoing findings also support the court's conclusion that the pipes are not fixtures owned by the abutting landowners, but the personal property of Mr. McHenry and his water company. The agreements, the custom in the trade, and Mr. McHenry's purpose as a water purveyor are objective indicators of his intent that the pipes remain his chattels.

The District attacks the foregoing findings and conclusions on several grounds. First, it challenges the applicability of the presumption that a person other than the landowner who makes an annexation in furtherance of his own purposes intends to reserve title. In support of this position, it contends: (1) Mr. McHenry was a contractor hired by the various developers for their purposes; (2) the developers' intent, as evidenced by their covenants to provide water to the lots developed, was to permanently improve the land; (3) Mr. McHenry could not *reserve* title because the developers owned the pipes he installed; and (4) assuming he could reserve title, that reservation is ineffective as to the lot owners who did not have notice of his intent.

As noted above, the Superior Court resolved the disputes regarding Mr. McHenry's status and intent against the District. While the developers did pay for the installation, the written agreements and the testimony relating to the oral agreements indicate the intent of all immediately concerned was that the pipes would be the property of Mr. McHenry. Thus, the District's contention that Mr. McHenry could not reserve title to the pipes because he did not purchase them in the first place is rejected.

■ The District's assertion that the lot owners had no notice of the annexor's intent and therefore are not bound must also fail. An annexor is estopped to assert his separate ownership of a chattel if third persons are misled by the appearance of the annexation. 5 *American Law of Property* 38–39. The evidence indicates the lot owners were not misled. Mr. McHenry, the developers, and the county engineer testified Mr. McHenry repaired, maintained and replaced the pipes in question. Mr. McHenry and a supervisor in the county assessor's office said Mr. McHenry paid the personal property taxes on the pipes. Thus, there was no basis on which an abutting landowner could reasonably assume a private right to water mains which necessarily served many customers beyond his property.

Second, the District maintains the Superior Court's findings that the pipes remained Mr. McHenry's personalty are improperly based upon Mr. McHenry's subjective intent. According to the District, the only objective measure of intent is the developer's covenants to provide the lots with domestic water—covenants which the District contends evidence an intent on the part of the developers to permanently improve the land by installing the pipes. However, the District ignores (1) the fact that Mr. McHenry was the water purveyor for the area, which supports his testimony that he installed the pipes for his company's purposes; and (2) the written and oral agreements between McHenry and the various developers which indicate the developers, as well as McHenry, intended he own the pipes.

Third, the District asserts that the Superior Court's findings regarding Mr. McHenry's ownership, based upon custom and agreement, are not supported by substantial evidence. The testimony as to custom was that the developer pays for the costs of installation, and the water purveyor then accepts the pipe as part of its system and assumes ownership thereof. The court, based upon substantial evidence, reasonably concluded that where the purveyor is the installer of the system, the transfer of title to the pipe occurs at the time of installation. As a sewer

district and water purveyor itself, the District should have been aware of this custom.

The evidence of custom alone would be sufficient to support a finding that the annexor intended the pipes remain personalty. In addition, the Superior Court had before it evidence of the written and oral agreements made by Mr. McHenry and the developers to the effect Mr. McHenry owned the pipes. The District relies on *Boeringa v. Perry, supra,* in its argument that it is not bound by the agreements. However, *Boeringa* states only "where a subsequent purchaser for value has no notice, either actual or constructive . . . that the property in question has been agreed and determined to be chattel property", then the annexation is treated as real estate. *Boeringa,* at 62. The rule applies to purchasers of land. Here, the District is not purchasing the land. The purchasers are the abutting landowners and, as stated above, they were not misled by the appearance of the pipes. Even if the rule applied, the District cannot be considered a purchaser without notice since it is held to knowledge of the custom in the trade and, like the abutting landowners, could not reasonably have been misled by the appearance of the pipes.

Consequently, we find no error in the Superior Court's findings and conclusions that the McHenrys owned the pipes under the county rights of way.

Next, we turn to the issue presented by the appeal from the declaratory judgment, *i.e.,* did the Corporation's tender of a statutory warranty deed amount to a tender of marketable title? Marketable title has been defined as one free of reasonable doubt and such as a reasonably informed and intelligent buyer, exercising ordinary business prudence, would be willing to accept. It need not be perfect in the sense it is free of every conceivable technical criticism, but only from those possibilities of a defect which would give rise to a reasonable question of its validity. *Brown v. Herman,* 75 Wn.2d 816, 823, 454 P.2d 212 (1969) (citing *Hebb v. Severson,* 32 Wn.2d 159, 201 P.2d 156 (1948) and *Milton v. Crawford,* 65 Wash. 145, 118 P. 32 (1911)).

Here, the District questioned the Corporation's ability to convey marketable title to the pipes beneath the county roads and to what is commonly called the McKie and Follger easements. As to the pipes under the roads, we have held above that these pipes are personalty owned by the Corporation. The evidence at the remand hearing on this issue supports a conclusion that the Corporation's title to the pipes is such as a reasonable buyer would be willing to accept. *Brown v. Herman, supra.* Accordingly, we hold the Corporation's tender of the statutory warranty deed amounted to a tender of marketable title.

As to the McKie and Follger easements, the McHenrys have now produced quitclaim deeds for the same. Both deeds arguably were produced after a "reasonable time" for tender of title had passed. *Jenson v. Richens,* 74 Wn.2d 41, 46, 442 P.2d 636 (1968). However, the value of those easements represents so small a portion of the total arbitration award that a breach relating to them is not material and will not excuse the District from performing its agreement.[2] *McEachren v. Sherwood & Roberts, Inc.,* 36 Wn. App. 576, 580, 675 P.2d 1266 (1984).

Lastly, we turn to the McHenrys' request for attorney's fees on appeal. Their request is based on paragraph 8.4 of the sale and arbitration agreement which provides:

> The District further covenants that it will maintain water rates sufficient to fund the time payment purchase of the McHenrys' share of the corporate stock described in this agreement. If at any time the District defaults upon any time payment provided for herein by not making such payment within 30 days after the same is due, then the McHenrys shall be entitled to bring a superior court action specifically compelling the commissioners to increase water rates in an amount sufficient to pay the McHenrys' arrearages and to fund all future time payments owed the McHenrys under the agreement. If the

---

[2] At the arbitration hearing, the Corporation's appraiser valued the McKie easement at $700, the Follger easement at $2,600 (see exhibit 58 of the arbitration hearing), and the pipes in the Follger easement at $10,900 (see exhibit 6). The arbitrators set the total value of the Corporation's stock and assets at $739,749.66.

McHenrys do commence court action after default on time payment as provided in this paragraph, the McHenrys' legal fees and costs shall be borne by the District.

This paragraph does not cover the litigation here. The paragraph speaks of an action by the McHenrys to specifically compel the commissioners to increase the water rates to cover the payments to the McHenrys. The action here was originally to show cause why the District should not be required to pay the McHenrys the initial $30,000 down payment, not to compel the commissioners to make possible payments to the McHenrys. Thus, the McHenrys' request for attorney's fees on appeal is denied.

The declaratory judgment of the Superior Court is reversed; the District is ordered to perform under the parties' agreement.

GREEN, A.C.J., and THOMPSON, J., concur.

Review denied by Supreme Court September 7, 1984.