**R & D AMUSEMENT CORPORATION,**
Plaintiff and Appellee,

v.

**Jim CHRISTIANSON and Loren J. Anderson, d.b.a. Gem Investment Group,**
Defendants and Appellants.

Civ. No. 11145.

Supreme Court of North Dakota.

July 30, 1986.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellee; argued by Steven L. Latham.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for defendants and appellants; argued by Ardell Tharaldson.

LEVINE, Justice.

Jim Christianson and Loren J. Anderson, d.b.a. Gem Investment Group (Gem) appeal from a judgment awarding R & D Amusement Corporation (R & D) $7,114.97 and dismissing Gem's counterclaim. We reverse in part and affirm in part.

In 1966 R & D leased a theater housed in a building owned by Rose Patterson. In 1976, R & D installed air conditioning in the theater, allegedly pursuant to a cost sharing agreement with the Rose Patterson Estate (Rose Patterson died in 1975). Soon afterward the building housing the theater was purchased by Midstate Investment Corporation, which in 1980 sold the building to A & G Company.

In 1980 the city of Bismarck condemned the building. R & D stopped operating the theater, but with A & G's consent stored equipment there. In the fall of 1982, following A & G's sale of the building to Gem,

R & D removed not only the equipment it had stored in the theater, but also some heating units it had installed in 1979.

In 1983 R & D sued Gem to recover a portion of the cost of the air conditioning, alleging that its 1976 agreement with the Rose Patterson Estate was binding upon Gem. Gem denied liability and counterclaimed alleging that R & D wrongfully removed the heating units when it vacated the theater. Following a bench trial, the court held Gem to be liable to R & D for a portion of the air conditioning costs and dismissed Gem's counterclaim with prejudice. Gem appealed.

■ R & D's action against Gem is based upon a memorandum agreement by which the Rose Patterson Estate purportedly agreed to reimburse R & D for a proportionate share of R & D's costs in installing air conditioning in the theater. The trial court admitted the memorandum agreement into evidence. This, Gem maintains was reversible error because the document was not adequately authenticated. We agree.

Generally, before documentary evidence is admissible it must be authenticated. All that authentication requires is that the party offering the evidence show that the document is what he claims it to be; here a binding agreement between the Rose Patterson Estate and R & D. North Dakota Rule of Evidence 901(a); *see generally* 11 Moore's Fed.Prac. § 901.02; 5 Weinstein's Evidence, ¶ 901(a)[01].

The purpose of authentication is to establish the document's relevancy. If a statement allegedly made by $X$ is relevant to a case, and a letter containing that statement is offered, the letter is irrelevant unless it can be authenticated by showing $X$ was its author. *See* 11 Moore's Fed.Prac. § 901.-02. Thus, authentication is simply a process of establishing the relevancy of a document by connecting it with a person, place or thing. *Farmers Union Oil Co. of Dickinson v. Wood,* 301 N.W.2d 129 (N.D. 1980). In the absence of a showing of authenticity, documentary evidence is sim-

ply irrelevant and therefore inadmissible. N.D.R.Ev. 402.

N.D.R.Ev. 901(a) treats questions of authentication as matters of conditional relevance to be determined according to N.D.R.Ev. 104(b). Explanatory Note to N.D.R.Ev. 901, N.D.Court Rules 1986 Desk Copy. The relevancy of a document is conditioned upon its authenticity. Thus, when a document is offered, a judge must make a preliminary determination whether sufficient proof has been introduced to allow a reasonable fact finder to conclude the document is authentic; *i.e.,* it is what its proponent claims it to be. If so, the judge must admit the evidence and the question of its weight and prosecutive force is one for the jury. N.D.R.Ev. 104(b); *State v. Vetsch,* 368 N.W.2d 547 (N.D.1985); *see generally* 11 Moore's Fed.Prac. § 901.03; 5 Weinstein's Evidence ¶ 901(a)[01].

The question whether evidence should be excluded for lack of authentication is primarily within the sound discretion of the trial court. *See State v. Schneider,* 389 N.W.2d 604 (N.D.1986). An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Lange v. Cusey,* 379 N.W.2d 775 (N.D.1985).

Consequently, to constitute reversible error, the trial court must have abused its discretion, by acting unreasonably, in concluding that the memorandum agreement was adequately authenticated.

The memorandum agreement, by which R & D alleges that the Rose Patterson Estate, and thus Gem as successor in interest, agreed to proportionately reimburse R & D for installing the air conditioning, contains but one signature:

"ESTATE OF ROSE PATTERSON
"By S/ ROBERT H. THIEREN
"Manager of Properties"

Gem argues that the memorandum agreement was not authenticated because there was not sufficient evidence that the signature on it was Thieren's. The entire testimony concerning the memorandum agreement was that of an employee of R & D who simply testified that the original

agreement was in R & D's corporate records. R & D offered no additional evidence that the signature was in fact that of Thieren; *e.g.*, Thieren's testimony that the signature was his; testimony by another who saw Thieren sign the memorandum agreement, *e.g.*, *Farmers Union Oil Co. of Dickinson v. Wood, supra;* or expert or lay testimony that the signature was Thieren's, NDREv 901(b)(2) and (3). Nor did R & D attempt to otherwise authenticate the agreement, *e.g.*, testimony that the agreement was in fact what R & D claims it to be. *See Farmers Union Oil Co. of Dickinson v. Wood, supra,* (N.D.R.Ev. 901(b) places no limitations upon the number of methods of authentication).

The only evidence to authenticate the memorandum agreement in any fashion was circumstantial. R & D installed the air conditioning at a time and cost consistent with the terms of the memorandum agreement. Based upon the evidence, the only argument we can conjure up to support the trial court's decision to admit the document rests on speculation and inferences drawn from that speculation, to-wit: R & D would not have installed the air conditioning if the memorandum agreement were not binding; the memorandum agreement was binding only if signed by Thieren; therefore, because R & D installed the air conditioning, it must be Thieren's signature on the memorandum agreement. This argument is hopelessly circular.

There must be evidence of foundation sufficient to allow a reasonable fact finder to conclude that it was Thieren's signature on the memorandum agreement. If no such foundation is established the document is inadmissible. *See Osborn v. Empire Life Ins. Co. of America,* 342 So.2d 763 (Ala.1977); *DePearl Corp. v. Com.,* 65 Pa. Cmwlth. 140, 442 A.2d 1 (1982). Here R & D failed to meet the threshold. Consequently, we hold that the trial court abused its discretion by concluding that the memorandum agreement was adequately authenticated and thus admissible.

■ In a bench case introduction of inadmissible evidence is reversible error only when it affirmatively appears that the incompetent evidence induced the trial court to make an essential finding which would not otherwise have been made. *Fuhrman v. Fuhrman,* 254 N.W.2d 97 (N.D.1977). Here, it is obvious that had the memorandum agreement not been admitted into evidence, the trial court could not have found it to be binding upon Gem. Consequently, the trial court committed reversible error in admitting the memorandum agreement and we accordingly reverse that part of the judgment awarding R & D $7,114.97.

However, we do affirm the trial court's dismissal of Gem's counterclaim. Gem argues that the trial court erred in dismissing its counterclaim which sought compensation for R & D's removal of heating appliances from the theater.

In 1979 R & D installed in the theater at its own expense several ceiling-hanging space heaters, baseboard heaters, a heating coil in the existing duct work, and thermostats. When R & D vacated the theater it removed this heating equipment. Gem claims the heating accessories were fixtures and thus, pursuant to NDCC § 47–06–04, the property of the building owner, Gem. R & D asserts that the heating apparatus constituted trade fixtures which it could lawfully remove.

NDCC § 47–06–04 provides that a tenant may remove from the leased premises anything the tenant affixed thereto for the purpose of his trade, if the removal can be effected without injury to the premises and so long as the fixture has not become an integral part of the premises by the manner in which it is affixed.

The right of an outgoing tenant to remove trade fixtures is based upon the sound policy of encouraging trade and industry by allowing tenants to make the most beneficial use of the leased premises. *Cameron v. Oakland County Gas & Oil Co.,* 277 Mich. 442, 269 N.W. 227 (1936); *see generally* 2 Tiffany, Real Property, § 617 (3d ed.); 1 Thompson, Real Property, § 77 (1980). Otherwise, a tenant would hesitate to undergo large expenditures in installing the necessities of his trade if

ownership of these articles would pass to the landlord by operation of law. A trade fixture is erected to aid the tenant in conducting his business, and not to improve the landlord's remainder interest in the property who, having contributed nothing in purchasing the trade fixtures, should not be unjustly enriched at the tenant's expense.

■ Whether an item constitutes a trade fixture depends upon the facts and circumstances of each case, *Schnaible v. City of Bismarck*, 275 N.W.2d 859 (N.D.1979). However, a trade fixture can generally be defined as personal property annexed to the leased premises by the tenant for the purpose of carrying on the business to which the premises are devoted. *See generally* Tiffany, *supra.*

■ In general, three factors are examined to determine if an item installed in a building is a trade fixture: (1) the means by which it has been annexed to the real estate; (2) whether it is adapted to and necessary for the purpose for which the premises is devoted; and (3) whether the parties intended that the article become a permanent part of the realty. *Schnaible v. City of Bismarck, supra; B. Kreisman & Co. v. First Arlington Nat. Bank*, 91 Ill. App.3d 847, 47 Ill.Dec. 757, 415 N.E.2d 1070 (1980). Preeminent among these factors is the parties' intent; the other two factors find their primary utility as evidence of that intent. *B. Kreisman & Co., supra.*

Applying these factors to the facts at hand, we conclude that the heating apparatus constituted trade fixtures. First, the heating equipment was not permanently and irrevocably attached to the building, but affixed simply by bolts, and was removed without causing any substantial damage to the building. Second, an adequate heating system is a *sine qua non* to the operation of a theater, which to be successful of course must maintain a comfortable environment for its patrons. Third, when a tenant installs fixtures in furtherance of his own purposes, there is a presumption that they are intended to be

trade fixtures. *See Sulphur Springs Val. Elec. Co-op. v. City of Tombstone*, 1 Ariz. App. 268, 401 P.2d 753 (1965); *In re Horton's Estate*, 606 S.W.2d 792 (Mo.App. 1980); *Liberty Lake Sewer Dist. No. 1 v. Liberty Lake Utilities Co., Inc.*, 37 Wash. App. 809, 683 P.2d 1117 (1984); *Wisconsin Dept. of Revenue v. A.O. Smith Harvestore Products, Inc.*, 72 Wis.2d 60, 240 N.W.2d 357 (1976). Here there is no evidence that when R & D installed the heating apparatus that either R & D, Midwest Investment Corp., then owner of the building, or Gem intended the heaters to become a permanent part of the realty. Consequently, we conclude that the heating equipment constituted trade fixtures which, pursuant to NDCC § 47–06–04, could be lawfully removed at the end of R & D's tenancy. Therefore, the trial court did not err in dismissing Gem's counterclaim.

Accordingly, we reverse that part of the judgment awarding R & D recovery on its complaint and affirm that part of the judgment dismissing Gem's counterclaim.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

MESCHKE, Justice, concurring.

I concur in the result.

I would not rest the decision about enforceability of the memorandum agreement on evidentiary grounds. While Justice Levine's opinion recognizes that questions of authentication under Rule 901 are matters of conditional relevance to be determined according to Rule 104(b), it fails to recognize that on questions of conditional relevancy under Rule 104(b), the finder of fact "is to determine whether the preliminary fact exists." Explanatory Note to N.D. R.Ev. 104, North Dakota Court Rules, 1986 Desk Copy. Since N.D.R.Ev. 901(b)(4) recognizes that contents or substance, "taken in conjunction with circumstances," is "evidence sufficient to support a finding that the matter in question is what its proponent claims," I would defer to the sound discretion and finding of the trial court.

Rather, I am persuaded that "the alleged agreement should be found unenforceable as to GEM", as Gem also argues, although I have difficulty with the lack of notice reasons advanced by Gem. There is no basis shown why Gem should be liable on an agreement to pay money which was signed by a third person, the Rose Patterson Estate. Absent agreement by Gem to assume or to pay the obligation to R & D, I see no basis to hold Gem liable. Therefore, I concur in reversing the judgment awarding R & D recovery against Gem.

I would also affirm dismissal of Gem's counterclaim for the reason given by the trial court: "[T]he defendant's evidence has failed to establish said claim by a preponderance of the evidence." N.D.R.Civ.P. 52(a).