**In re Terry D. LOGAN and Charlene M. Logan, husband and wife, Debtors.**

**Terry D. and Charlene M. LOGAN, husband and wife, Plaintiffs,**

v.

**Richard and Michelle AHLBRECHT, husband and wife, Defendants.**

**Bankruptcy No. 89–01973–K31. Adv. No. A94–0065–K31.**

United States Bankruptcy Court, E.D. Washington.

Feb. 2, 1996.

Zachary Mosner, Seattle, WA, for the State of Washington.

Craig S. Sternberg, Seattle, WA, for plaintiffs/debtors.

Robert M. Boggs, Yakima, WA, for Ahlbrechts/defendants.

Thomas J. Sawyer, Washington, D.C., for Internal Revenue Service.

## MEMORANDUM OPINION

JOHN M. KLOBUCHER, Bankruptcy Judge:

### JURISDICTION

Jurisdiction of this court is proper pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a), (b)(1) and (2), and Local Rule 29 of the United States District Court for the Eastern District of Washington.

## ISSUE

This case involves a recreational summer home which is located on real property within the Snoqualmie National Forest subject to a "Term Special Use Permit". The debtors were the owners of the summer home at the time they filed their petition in bankruptcy. It was sold during the course of administration and the proceeds have been interplead into the registry of the Court.

The issue involved is one of priority among competing encumbrancers. The debtors purchased the property in 1984 and obtained title by means of a "Bill of Sale". As a part of the transaction they granted the Ahlbrechts a security interest in the property and executed a financing statement which was filed with the State of Washington Department of Licensing. That filing, however, lapsed prior to the bankruptcy petition without the filing of a continuation statement. The security interest of the Ahlbrechts was treated as personal property and no "fixture filing" was attempted. Both the federal and state governments subsequently obtained tax liens against all property of the debtors.

It is the contention of the Ahlbrechts that their security interest, being first in time, takes priority over the tax liens. It is their contention that the summer home falls within the category of "consumer goods", that it is not a "fixture" and that their security agreement was automatically perfected without the filing of a financing statement pursuant to the terms of Article 9 of the Uniform Commercial Code.

The governmental agencies, on the other hand, argue that the summer home does not fall within the category of "consumer goods" and that, even if it does, it is a "fixture" and a security interest therein must be perfected with a "fixture filing".

## DISCUSSION

The security agreement obtained by the Ahlbrechts was accompanied with the filing of a financing statement with the State of Washington Department of Licensing. It was not, however, recorded as a fixture filing with the Auditor of the County wherein the real property is situate. In any event, the term of the financing statement had expired prior to the bankruptcy without the filing of a continuation statement, so if the financing statement were critical to the priority of the security interest the tax liens would have obtained priority upon its expiration. See *General Electric Credit Corporation v. Isaacs,* 90 Wash.2d 234, 581 P.2d 1032 (1978).

■ It is first necessary to determine whether the summer home falls within the category of "consumer goods". Otherwise the filing of a financing statement would be critical to perfection of the security interest.

RCW 62A.9–302(1)(d) provides as follows:

(1) A financing statement must be filed to perfect all security interests except the following: ...

(d) *a purchase money security interest in consumer goods;* but filing is required for a motor vehicle required to be registered and other property subject to subsection (3) of this section; and *fixture filing is required for priority over conflicting interests in fixtures to the extent provided in RCW 62A.9–313;* .... (emphasis added).

It is conceded by the governmental agencies that the Ahlbrechts hold a purchase money security interest in the summer home. It is their contention however that the property does not fall within the definition of "consumer goods".

"Goods" are defined under RCW 62A.9–105(1)(h) as follows:

(h) "Goods" includes all things which are movable at the time the security interest attaches *or which are fixtures* (RCW 62A.9–313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals or the like (including oil and gas) before extraction. "Goods" also includes standing timber which is to be cut and removed under a conveyance or contract for sale, the unborn young of animals and growing crops; (emphasis added)

Clearly the summer home would fall within the definition of "goods" even if it were classified as a fixture, and none of the parties have seriously contended that the summer home was not bought and used primarily for personal, family or household purposes. *Commercial Credit Equipment Corporation v. Carter*, 83 Wash.2d 136, 516 P.2d 767 (1973) clearly demonstrates the broad parameters of Washington's interpretation of consumer goods.

[T]he classifications of Sec. 9109 are based solely on use or function and it is almost, if not impossible, to conceive of an item of tangible personal property that cannot be a consumer goods. Even the recently retired "Queen Mary" could qualify as a consumer good if purchased by a billionaire for his own personal use and one recalls that the late Henry Ford, at one time, bought up entire factories for his personal museum. (*Commercial Credit*, pg. 142, 516 P.2d 767)

Thus, I have come to the conclusion that the summer home at issue falls within the definition of "consumer goods" and that it does therefore fall within the exception of subsection 302(1)(d).

■ The crux of this case then turns upon whether the summer home also falls within the definition of a "fixture", which would necessitate a fixture filing in order to obtain priority over some conflicting interests under Article 9 of the Uniform Commercial Code if applicable in this case.

RCW 62A.9–313(1)(a) provides as follows:

Goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law.

■ Thus, the Uniform Commercial Code, as enacted by the State of Washington, does not specifically define fixtures other than to defer that definition to real estate law which, at least in Washington, has evolved through case law.[1]

The Supreme Court of Washington as early as 1905 adopted a litmus test for the determination of fixtures.

" 'The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.' " *Filley v. Christopher*, 39 Wash. 22, 80 P. 834 (1905).

That criterion is reaffirmed in subsequent case law, but was refined in *Ballard v. Alaska Theater Co.*, 93 Wash. 655, 161 P. 478 (1916), where we find the following statement:

"In determining whether a chattel which has been annexed to the freehold is a trade fixture or a part of the realty, the cardinal inquiry is into the intent of the party making the annexation. Often there is difficulty in determining the intent, but, whatever may be the legal relation of the parties between whom the controversy is waged,

---

1. The American Law of fixtures has evolved along two separate paths among the several states. Some courts have adhered more closely to the early English and Roman concept of the physical nature of the article itself in reaching a determination of its identity, while other courts have drifted toward a concept which relies more upon the circumstances of the annexation and the intent of the parties who accomplish that act. Alphonse M. Squillante, *191 The Law of Fixtures: Common Law and the Uniform Commercial Code*, 15 Hofstra L.Rev. 191 (1987).

Those courts which emphasize the physical attributes of the object usually rely upon the manner of annexation of the object to the real property and the injury that would likely result from its removal, including injury to the object itself. On the other hand, those cases which emphasize the intent of the parties making the annexation place less importance on the damage caused by removal barring damage to the real property itself. Those cases which emphasize the nature of the object and the method of its annexation often look to the appearance which the object conveys to a casual observer, while those cases which emphasize the intent of the annexor disregard the physical appearance in defining the object as a fixture or a chattel, leaving the protection of parties who might be deceived by such appearance up to equitable estoppel doctrines. A distinction between these two basic approaches may have taken on significantly more importance with the advent of the Uniform Commercial Code.

when the intent is discovered it is generally controlling."

In *Liberty Lake Sewer District No. 1 v. Liberty Lake Utilities Company, Inc.*, 37 Wash.App. 809, 683 P.2d 1117 (1984), it was argued that underground water pipes had become fixtures in spite of the intent of the annexor that they would remain personal property. The court rejected that argument, pointing out that Washington case law has clearly established that the intention of the annexor is the most important factor of consideration and that such intent is determined from the circumstances surrounding the annexation, including the nature of the article affixed, the annexor's situation in relation to the freehold, the manner of annexation, and the purpose for which it was made. When a person with no interest in the land affixes an article thereto in the furtherance of his own purposes, the presumption is that he intends to reserve title to the chattel in himself.

The court pointed out that cases where innocent purchasers for value have prevailed over the intent of the annexor are based upon equitable doctrines and not upon the law of fixtures.

The District relies on *Boeringa v. Perry* [96 Wash. 57, 164 P. 773] [ (1917) ], *supra*, in its argument that it is not bound by the agreements. However, *Boeringa* states only "where a subsequent purchaser for value has no notice, either actual or constructive ... that the property in question has been agreed and determined to be chattel property", then the annexation is treated as real estate. *Boeringa*, at 62 [164 P. 773]. The rule applies to purchasers of land. Here, the District is not purchasing the land. The purchasers are the abutting landowners and, as stated above, they were not misled by the appearance of the pipes. Even if the rule applied, the District cannot be considered a purchaser without notice since it is held to knowledge of the custom in the trade and, like the abutting landowners, could not reasonably have been misled by the appearance of the pipes. *Liberty Lake Sewer*, page 817, 683 P.2d 1117.

These cases emphasize that the intent is to be determined from the objective circumstances surrounding the annexation and not from the secret intent as espoused by the testimony of the annexor.

An examination of the objective facts in the case at bar leads me to the following observations. Considering first the nature of the article affixed, it cannot be denied that it has the appearance of a permanent structure. Although it rests upon pier blocks as opposed to a foundation, and can be removed without damage to the real property, its removal would probably cause substantial damage to the structure itself. From the photographs in evidence it appears that its removal from the site would either require the felling of some trees or a dissection of the structure. It has the appearance of a residence, but the special term use permit limits its use to summer recreational purposes and prohibits its use as a permanent residence. It must be removed within a reasonable time following termination of the permit.

Under the facts of this case I conclude that the nature of the article affixed is outweighed by the circumstances surrounding the annexation, the annexors' situation in relation to the freehold, and the purpose for which it was made. I emphasize that the property involved here is national forest property owned by the United States of America. The use of property within our national forests is rigidly restricted by federal statutes and regulations of the Department of Agriculture. Exhibit U.S.A. # 1 depicts a huge sign near the highway upon entry "Wenatchee National Forest—U.S. Department of Agriculture". The second page of that exhibit depicts another large sign abutting the roadway leading to the summer home which advises "*NOTICE* SPECIAL USE PERMIT AREA. ROADWAYS FOR INGRESS AND EGRESS "ONLY" ".

16 U.S.C. § 497 authorizes the Secretary of Agriculture "... to permit the use and occupancy of suitable areas of land within the national forests, not exceeding five acres and for periods not exceeding thirty years, for the purpose of constructing or maintaining summer homes ...". That statute further provides "the authority provided by this paragraph shall be exercised in such manner as not to preclude the general public from

full enjoyment of the natural, scenic, recreational, and other aspects of the national forests."

■ The law is settled that SPECIAL USE PERMITS create no vested property rights. See *Paulina Lake Historic Cabin Owners Association v. U.S.D.A. Forest Service*, 577 F.Supp. 1188 (D.Ore.1983).

The "term special use permit" issued to the debtors in this case was to expire December 31, 1998. By its terms it was non-transferrable and provided that the structures on the property must be removed upon termination. Failure of the permittee to remove the structures could result in their removal by the federal government at the expense of the permittee.

It is difficult to imagine a case that would more clearly demonstrate the intent of the parties to maintain the severability of a structure from the real property upon which it is situated. Not only is the structure movable, but it must be removed upon termination of the special use permit. I find these factors to far outweigh the argument that it may be difficult to transport the structure as a single unit down the narrow roadway which leads to its present location.

■ It is my conclusion, therefore, that the summer home in question is not "so related to particular real estate that an interest in (it) arises under real estate law". The interest created was purely that of personal property. A "fixture filing" was not required under the Uniform Commercial Code, and any priority of the tax liens over the security interest of the Ahlbrechts would have to be founded purely on equitable principles.

Neither the federal government nor the State of Washington is in a position to urge the application of estoppel or other equitable doctrines which might result in the structure being treated as real property. Neither enjoys the posture of a purchaser in good faith and for value. Both entities merely assert tax liens against property rights of the Ahlbrechts, who are not liable for the taxes. Neither entity was mislead by the Ahlbrechts' failure to give additional notice of their security interest in the property. Furthermore, the Internal Revenue Service is in

an unenviable position to argue the permanent nature of the structure when it was the United States Government that ordered its severance. The parties have not addressed the issue of whether the knowledge of one governmental agency may be imputed to another agency and the court, for the reasons stated herein, finds it unnecessary to explore that issue.

■ The Internal Revenue Service places heavy emphasis on the fact that the attorney for the Ahlbrechts at the time of sale did file a financing statement. It is argued that this evidences an admission on the part of the Ahlbrechts that the filing of a financing statement was critical to the perfection of their security interest. That conclusion however, is unwarranted. Although the filing of a financing statement was not necessary to protect their interest against an encumbrancer of the Logans' interest, a literal interpretation of the Uniform Commercial Code leads me to the conclusion that failure to file a financing statement would leave them unprotected against a purchaser for value of the Logans' interest. RCW 62A.9–307(2) provides as follows:

> In the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods.

I conclude that it was at the very least appropriate for the Ahlbrechts' attorney to file a financing statement, and that his failure to do so would probably constitute negligence.

### CONCLUSION

I conclude from the above that the summer home at issue does fall within the category of "consumer goods" but that it is not so related to the particular real estate that an interest in it arises under Washington Real Estate Law and therefore is not a "fixture" as defined by RCW 62A.9–313(a). The security interest of the Ahlbrechts was automatically perfected without the necessity of a filed

financing statement and, being first in time, takes priority over the liens of the Internal Revenue Service and the State of Washington.[2]

---

**2.** I note in passing that even if the cabin were to be classified as a fixture, it might be entitled to priority over the governmental liens pursuant to RCW 62A.9–313(4)(d) which provides as follows:

(4) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where ...

(d) the conflicting interest is a lien on the real estate obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this Article.

It might be argued that "any method permitted by this Article" as to a purchase money security interest in consumer goods means that it may be perfected without any filing at all, inasmuch as RCW 62A.9–302(1)(d) provides that such security interest is automatically perfected whereas Section 313 merely refines the issue of priorities. See Eldon H. Reiley, *Guidebook to Security Interests in Personal Property*, CB GSI § 12.09, n. 71, (1986–1989). That issue, however, was not addressed by the parties and, inasmuch as I have concluded that the cabin is not a fixture I find it unnecessary to further explore the same.